# CHARLESTON.

POLING *et al. v.* HUFFMAN *et al.*

Decided December 21, 1900.

1. COMMISSIONER'S REPORT PRIMA FACIE CORRECT—*Decree—Error.*

A commissioner's report, made in a cause rightly referred, on the face of which no error appeared, will be presumed by the court as admitted to be correct by the parties, not only so far as it settles the principles of the account, but also in regard to tne sufficiency of the evidence upon which it is founded, except in so far, and as to such parts thereof, as may be objected to by proper exceptions taken thereto before the hearing, and the court at the hearing is bound to observe this rule of equity practice. And it is error for the court at the hearing to remodel and restate the whole account stated in such report, and enter a decree on its own statement, without reference to the account stated by the commissioner, or the action of the parties in excepting or not excepting thereto. (p. 650).

2. COMMISSIONER'S REPORT—*Exceptions—Decree.*

An exception to a report of commissioner, in general terms, that the commissioner has, under the proofs in the cause, found too small an amount in favor of the exceptor, and that the evidence taken in the cause shows him to be entitled to a much larger sum of money than that allowed by the commissioner, when a large amount of conflicting evidence has been taken thereon, is too general and indefinite to warrant the court in decreeing a greater and different sum to exceptant, entirely disregarding the report of the commissioner. (pp. 650, 651).

3. UNSATISFACTORY REPORT—*Court Can Recommit.*

Such report, if not satisfactory to the court, should have been recommitted for a re-statement of the account, on such principles as in the court's view would correct the errors in the report. (p. 651).

4. WRITTEN CONTRACT—*Decedent—Evidence.*

When a written contract has been made between parties, and one of the parties dies, and the survivor brings suit upon the contract for services performed thereunder, and offers himself as a witness to prove what services were rendered, so much of his testimony as tends to prove what the transaction was should be excluded. (p. 652).

Appeal from Circuit Court, Barbour County.

Action by Anthony B. Poling and Verney Poling against Anthony Huffman and James A. Williamson, administrator of Rebecca E. Huffman. From the decree Israel Poling, executor of Anthony Poling, deceased, pending suit, appeals.

*Reversed.*

SAMUEL V. WOODS and C. M. MURPHEY, for appellant.

W. T. ICE and MELVILLE PECK, for appellees.

MCWHORTER, PRESIDENT:

Anthony Huffman, Rebecca E. Huffman, Anthony B. Poling and Verney Poling made and entered into the following contract in writing: "An article of agreement, made and entered into December the 2d, 1890, between Anthony Huffman, of the first part, and Anthony Poling, of the second part, all of the county of Barbour and State of West Virginia: Now said Anthony Huffman doth covenant and agree with said Anthony Poling that he shall have one crop of grain off of the land that he fences and cleans up; then said Anthony Poling agrees

to give said Anthony Huffman one-third of the grain he raised on the land that he cleaned up. He is to clean up such fields as is agreeable to said Anthony Huffman; then said Anthony Poling agrees to give said Anthony Huffman one-third of the grain that he raised on the land that he fenced and cleaned up. He is to tend the potato patch and have half that is raised, and tend the garden and have half that is raised in the garden. Said Anthony Poling agrees to move in one of said Anthony Huffman's houses to do said Anthony Huffman's work, and a part of Rebecca E. Huffman's work. Said Anthony Poling agrees to do Anthony Huffman's winter work, such as feeding, getting wood, making fires, milling, other 'arrents' such as his condition may need, for four dollars per month. Said Anthony Huffman agrees to let said Anthony Poling have pasture for one horse and one cow for doing his milling and other 'arrents' through the summer. Anthony Poling and wife agree to stay two years with said Anthony Huffman and Rebecca E. Huffman, as Anthony Huffman is old and Rebecca E. Huffman's health is bad. They hereby make agreement that if Anthony Huffman and Rebecca E. Huffman die said Anthony Poling stays on said Anthony Huffman's farm if he wishes to do so the two years as aforesaid, and has the use of the farm without any charge of grain or rent until his two years is out. Anthony Poling's wife agrees to milk and wash and iron, and come in every morning and make the beds and sweep the house and do other turns about the work, and fetch in water and wood for Anthony and Rebecca E. Huffman for fifty cents per week. If Anthony Huffman or Rebecca E. Huffman is sick and if Anthony Poling and wife does the work and takes care of them they are to have any reasonable charge they make for taking good care of them. Now, Anthony Huffman and Rebecca E. Huffman and Anthony Poling and wife doth covenant and agree to this 'conartacle.' (Signed) Anthony Huffman [Seal] Rebecca E. Huffman, Anthony B. Poling, Verney Poling."

Rebecca E. Huffman died March 4, 1892. On the 21st of November, 1898, more than six months after the death of said Rebecca, her estate, on motion of Anthony B. Poling, was committed to James A. Williamson, sheriff of Barbour County, to be administered, and immediately after the appointment of such administrator, Anthony B. Poling and Verney Poling brought their suit to enforce their claim for services under said contract

for nine hundred dollars against the estate of Rebecca E. Huff-
man, deceased, Anthony Huffman as the sole heir and James A.
Williamson as the administrator of said decedent, was made
parties defendant. A demurrer to said bill because filed within
six months of the date of the appointment of the administrator,
was sustained, an appeal was taken from the decree dismissing
the bill, and the decree was by this Court reversed and the
demurrer overruled, (39 W. Va. 320), the cause remanded to be
further proceeded in. Anthony Huffman answered the bill, ad-
mits the contract but denies that plaintiffs did the work as
charged for; that for the work they did they were fully paid, and
they had a full settlement, and defendant paid what plaintiffs
claimed to be just, and what they then required, but long after
the death of Rebecca plaintiffs began to make unreasonable de-
mands of respondent, who was ninety years of age, and to
threaten him with suit; that to avoid scandal and annoyance of a
suit, he offered to give plaintiffs as a present fifty dollars, and
that too after he had settled with them and paid them in full;
that while the plaintiffs were working for him under the contract
and in the lifetime of Rebecca he had frequent and full settle-
ments with them and paid each every two weeks or thirty days
at most all they charged for their work; denies that Rebecca
desired to make a will in her last illness and devise her prop-
erty to plaintiffs and that respondent prevented her from doing
so; and denies that their services rendered Rebecca were woth
five dollars a day, or that the extra work charged for was worth
nine hundred dollars, and denied that they gave Rebecca any
extra care. Plaintiffs replied generally to the answer. On 26th
February, 1895, the death of defendant Anthony Huffman was
suggested on the record, and by consent of parties the cause was
revived and ordered to proceed against Israel Poling, executor
of said Anthony Huffman, deceased, and on the 31st day of
May, 1895, the executor of Anthony Huffman by counsel moved
to strike out and exclude from the depositions of plaintiffs all of
desired to make her will in her last illness and devise her prop-
the depositions of Anthony Poling and Verney Poling, his wife,
in so far as they relate to transactions and conversations had
between themselves or either of them and Anthony Huffman
upon the ground that all such evidence is incompetent, and inad-
missible against the executor, heirs at law, administrator and
next of kin of Rebecca Huffman and Anthony Huffman, both of

whom are now dead, which motion the court overruled, but upon the hearing would reject in its consideration all improper evidence, which would be stricken out under said motion if sustained. Further depositions were taken and filed for parties plaitiffs and defendants. The cause was referred to a commissioner to ascertain and report to the court from the evidence taken and to be taken in the cause "what will be a just and fair compensation to the plaintiffs for their services rendered Rebecca Huffman and Anthony Huffman under the contract in writing filed with the bill. The commissioner filed his report on the 26th of April, 1897, to the effect "that from all the papers before him in this cause that he has ascertained and is of the opinion that the said Anthony Huffman, as the heir of the said Rebecca E. Huffman, is indebted to the said Anthony B. Poling and Verney Poling for services rendered the said Rebecca E. Huffman during her last illness including interest to May 22, 1897, the sum of four hundred and thirty dollars and seventy-seven cents, which would be a lien on the fifty-three acres and eighty poles of land mentioned in the plaintiffs' bill in this cause, which decended to the said Anthony Huffman as the heir of said Rebecca E. Huffman." To which report plaintiffs excepted, and on the 17th of April, 1897, as to the amount the commissioner ascertained them to be entitled to under the proofs in the case, and insist that the evidence taken in the cause shows the plaintiffs to be entitled to a much larger sum of money under their contract than was found for them by the commissioner. On the 17th of November, 1897, the death of James A. Williamson, administrator of Rebecca E. Huffman, was suggested, and the cause was revived in the name of J. W. Robinson, administrator *de bonis non* of Rebecca Huffman, deceased, and the cause was heard on the report and upon the said exceptions, when the exceptions of plaintiffs were sustained, and the court proceeding to pass upon the pleadings and proofs in the cause found the same for the plaintiffs and decreed that they recover of and from the defendant Israel Poling, executor of Anthony Huffman, deceased, the sum of eight hundred and fifty-five dollars, being five dollars per day from the 13th day of September, 1891, to the 4th day of March, 1892, with interest thereon, from that date aggregating on the 1st day of November, 1897, the sum of one thousand one hundred and forty dollars, with interest from the said 1st day of November, 1897, until paid, and their costs of

this suit, being for services rendered in pursuance of the contract in the bill and proceedings in the cause mentioned, to be paid out of the assets in the hands of Israel Poling, executor of Anthony Huffman, which descended to said Anthony from Rebecca E. Huffman, deceased, and on motion of plaintiffs they were granted leave to file an amended bill in the cause for the purpose of enforcing payment of said demand against the real and personal property which descended to said Anthony Huffman, deceased, from the said Rebecca E. Huffman, deceased. Plaintiffs filed their amended bill against Israel Poling, executor of Anthony Huffman, deceased, and in his own right, Elizabeth J. Poling, Delbert Poling, Cora Poling, Jacob Huffman, Sally Poling, Bathia Moore, Josiah Huffman, Martin Huffman, Jasper Huffman and J. W. Robinson, administrator of Rebecca Huffman, deceased, and allege that since the filing of their original bill defendants Williamson, administrator, and Anthony Huffman had died, and the cause revived against J. W. Robinson, administrator *de bonis non* of Rebecca Huffman and Israel Poling, executor of Anthony Huffman; refer to their original bill filed for the purpose of enforcing their demand against the estate of Rebecca Huffman, deceased, which consisted of a large amount of personal property of various items and of considerable value, and fifty-four acres of real estate on Bills creek in Barbour County, as shown in the original bill, which property real and personal descended to Anthony Huffman as the only heir at law of said Rebecca, and setting up their decree of November 17, 1897, for one thousand one hundred and forty dollars, with interest and costs. That Anthony Huffman died testate leaving to survive him as his heirs and legatees under his will Israel Poling, his executor, who intermarried with Elizabeth J. Huffman, Delbert Poling and Cora Poling who are the children of the said Israel and Elizabeth J. Poling, Jacob Huffman, Sally Huffman, who intermarried with one Martin Poling who has departed this life without heirs of his body, leaving to survive him his widow, the said Sally Poling, Bathia Moore, Josiah Huffman, who lives in the State of Indiana, Mattie Huffman, who is the widow of James Huffman, deceased, who long since died without heirs of his body, leaving surviving him his said widow Mattie Huffman, who also resides in the state of Indiana, and Jasper Huffman, who resides in the same state, and exhibits a copy of Anthony Huffman's will; that at the time of his death Anthony

was the owner of a tract of one hundred and thirty-two acres of
land on Sugar creek in Barbour County, also the tract of fifty-
four acres which descended to him from Rebecca Huffman and
that he also left considerable personal property, such as horses,
sheep, cattle and moneys, bonds, notes and choses in action,
which went into the hands of his executor and has never been
accounted for so far as plaintiffs know; that Anthony's real estate
was not encumbered with dower, as his wife was long since de-
ceased; that he was not indebted to any extent whatever
except the debt of plaintiffs decreed to them, nor was
Rebecca Huffman otherwise indebted at the time of her
death, except to plaintiffs, and no personal property of hers ever
went into the hands of her administrator, the whole of it and
the fifty-four acres of land was taken by the said Anthony Huff-
man; that plaintiffs' demand is a valid, unpaid, ascertained debt
against the estate of Anthony Huffman, which they are entitled
to enforce in this Court; that the cause should be referred to a
commissioner for the purpose of settling the executorial ac-
counts of the said Israel Poling, executor of Anthony Huffman,
and J. W. Robinson, administrator of Rebecca Huffman, and
further for the purpose of ascertaining the estate, real and per-
sonal, owned by the said Anthony Huffman at the time of his
death, and from whence he derived title to the real estate of
which he died seized or possessed; the liens and charges against
his said estate, and pray that said cause be referred to a com-
missioner for the purpose of settling said administration ac-
counts; that the estate of Anthony Huffman be fully ascertained
and reported with the debts, liens and charges that may exist
against it; that so much of the real estate as may be necessary
may be sold and from the proceeds thereof the debts and charges
ascertained to exist against it be paid, the parties named as de-
fendants be required to answer, etc., and for general relief. On
the 24th of February, 1898, defendant Israel Poling entered his
demurrer to plaintiff's amended bill and no grounds of demurrer
being assigned, the same was overruled and leave given said de-
fendant to answer said bill on or before the 28th of February,
1898. And on March 2, 1898, the cause was heard on the papers,
orders and decrees theretofore read, made and entered, the
amended bill, process duly served on all resident defendants and
order of publication as to the non-residents, amended bill taken
for confessed as to all defendants served with process, including

defendant Israel Poling, who had appeared and demurred, and was given leave to answer, he still failing to answer, the bill was taken for confessed as to him. The cause was referred to Commissioner George M. Kittle "who is directed to take proof of, audit, state and settle the executorial accounts of the said Israel Poling, executor of Anthony Huffman, deceased. He shall also ascertain and report the real estate owned by the said Anthony Huffman at the time of his death, or which may have descended to him from Rebecca Huffman, deceased, the liens and proper charges on all of said lands, their character, amounts and priorities and to whom owing. Said commissioner may report any other matter deemed pertinent by himself or required by any of the parties. Before executing this order said commissioner shall publish and post the notice to creditors as required by section 8 of chapter 86 of the Code. Commissioner Kittle filed his report under said order November 4, 1898, to which the defendants Israel Poling, executor of Anthony Huffman, Elizabeth J. Poling, Delbert Poling and Cora Poling by their counsel filed their four exceptions, as folows:

"First. Because he reports as the first lien upon the fifty-four acres of land descended from Rebecca Huffman the decree of this court in favor of the plaintiffs for one thousand one hundred and forty dollars.

"Second. Because he reports as a lien upon all the personal estate of said decedent, the first lien on said one hundred and thirty-two acres and as a lien second upon the said fifty-four acres and the debt of Sam'l V. Woods for one hundred and nine dollars and twenty-six cents, which should have been reported as a lien first in order of priority on said fifty-four acres of land.

"Third. Because he reports as a lien upon any of the real estate the said decree for one thousand one hundred and forty dollars in favor of the plaintiffs.

"Fourth. Because he so reports the said one thousand one hundred and forty dollars without settling the administration accounts of Jacob W. Robinson, administrator of said Rebecca Huffman."

The cause was again heard on the 28th day of February, 1899, on said report, the proofs taken and returned therewith, and upon the four exceptions endorsed on said report, and upon all other proofs and records in said cause, "and it appearing to the court from the pleadings and proofs that there are no assets in

the hands of J. W. Robinson, administrator of Rebecca Huffman, deceased, on consideration whereof, it is adjudged, ordered and decreed that said commissioner's report be amended and reformed so as to report the debts appearing in said report as proper charges and not as liens against the real estate mentioned in said commissioner's report, and as here amended and reformed the said exceptions to said report, and each of them, to be overruled, and the court now proceeding to ascertain the proper charges against the fifty-four ..cres of land in said commissioner's report mentioned doth adjudge, order and decree that there is due to the plaintiffs the sum of one thousand three hundred and eighty-five dollars and ten cents, with interest thereon from the 30th day of October, 1898, until paid, which is a charge upon said fifty-four acres of land first in order of priority, and first to be paid out of the proceeds of the sale thereof. Second in order of priority on said fifty-four acres of land is the debt due to Samuel V. Woods of thirty-nine dollars and seventy-nine cents, with interest thereon as aforesaid, and also the further sum of sixty-nine dollars and forty-nine cents, with interest as aforesaid. It is further adjudged, ordered and decreed that there is due to the said Samuel V. Woods the two debts aforesaid, aggregating of principal and interest the sum of one hundred and nine dollars and twenty-six cents, which is a proper charge on the said one hundred and thirty-two acres of land and such personal estate, if any, as may come into the hands of the executor of Anthony Huffman, deceased," and unless paid within thirty days providing for sale of the fifty-four acres to pay the same, and providing that "All questions touching the right to have a sale of the one hundred and thirty-two acres of land and the liability for the timber cut and removed from the fifty-four acre tract of land by the said Israel Poling are reserved for the further order of this court." From this decree and also from that of November 17, 1897, the defendant Israel Poling, executor of the last will and testament of Antnony Huffman, appealed, and assigns the following errors:

"First. It was error to overrule the demurrer to the amended bill.

"Second. It was error to reform the first report of Commissioner Kittle and reform the report and raise the amount found due from four hundred and thirty dollars and seventy-seven cents, with interest, to eight hundred and fifty-five dollars, with

interest, and decree for the aggregate, one thousand one hundred and forty dollars.

"Third. It was error to decree upon the second report of Commissioner Kittle, as reformed by the court, without recommitting the same, for the sum of one thousand one hundred and forty dollars with interest, aggregating one thousand three hundred and eighty-five dollars and ten cents.

"Fourth. It was error to include in said several aggregate sums the interest upon the interest, which had theretofore been aggregated upon the first and original sum found by the commissioner of four hundred and thirty dollars and seventy-seven cents.

"Fifth. It was error to overrule petitioner's exceptions to said commissioner's report, particularly to his report of February 28, 1899.

"Sixth. It was error to decree to said Woods any sum, unless there was decreed to him the three sums found due by the commissioner, aggregating one hundred and thirty-nine dollars and twenty-six cents.

"Seventh. It was error to enter a final decree in this cause ordering a sale of the real estate converted into personalty by the will until the questions arising upon the validity of the will were determined.

"Eighth. It was error to reserve the question of liability upon petitioner for the timber cut and removed upon the said fifty-four acres of land under the pleadings in this cause."

As to the demurrer, defendant did not seem to rely upon it when he entered it as he offered no grounds for it and permitted it to be overruled without opposition, but it is now said plaintiffs brought in no new parties and no new subject matter, and could be of no possible assistance in reaching a just and equitable conclusion upon the matters set forth in the original bill. This is not a correct view of the matter. On the death of Anthony Huffman, the cause was revived only as to his executor. There being no personalty to satisfy any recovery which might be had the heirs and devisees of Anthony Huffman were necessary parties and it was proper that they should be brought in the bill and was proper to be filed. *Fowler* v. *Kelly's Heirs,* 3 W. Va. 71; *Rex.* v. *Creel,* 22 W. Va. 373; *Sommerville* v. *Sommerville,* 26 W. Va. 484. And in connection with this error or immediately following it in his brief appellant insists that it was error in the

court to refuse to strike out the testimony of the plaintiffs themselves "as to personal transactions and conversations between themselves and the decedents, upon which they predicate to a great extent and mainly prove their claim against the estate to the decedent, Rebecca Huffman," and cites *Owens* v. *Owens,* 14 W. Va. 88. In that case there was no written contract between the parties. JUDGE HAYMOND in the opinion of the Court says, "A contract, whether express or implied by law, is a transaction. And it seems to me that when one person testifies, that he did work and labor for another, generally he must be taken and considered as testifying to a transaction, in legal contemplation, between him and such other person, within the true meaning and intent of the law now under consideration," (section 23, chapter 130, Code) and then gives his reasons, which were good in that case but cannot apply here. He says, "because the testimony of the witness tends to prove, in legal effect, not only a request to do the work, but also a promise to pay him therefor, what the same was reasonably worth, and also that he did the work in consideration of said request. The doing of the work and labor is the consideration of the contract or promise to pay, whether express or implied, and it seems to me, cannot be separated from the contract or transaction very easily." There the evidence of the work done was necessary to prove the contract, the transaction and, as the judge says, "tending to prove WHAT THE TRANSACTION WAS," *i. e.,* what the contract was. In *Strong v. Dean,* 55 Barb. 337, where a similar question arose under the provision of a similar statute to ours, "In such a case the test of the admissibility of the testimony is, does it tend to prove what the transaction was?" *Stanley* v. *Whitney* 47 Barb. 586; *Belden* v. *Scott,* 65 Wis. 425. The case of *Fouse* v *Gilfillen,* 45 W. Va. 213 (32 S. E. 178) where it is held that Fouse is a competent witness in his own behalf, under section 23, chapter 130, Code, in the case, except only "in regard to any personal transaction or communication between himself and the deceased." "The contract of June 25, and September 26, 1892, which was the only personal communication or transaction between them prior to the time that Fouse quit work on the building, was complete in itself, and was on record. * * And what Fouse might testify to as to furnishing labor on or material for the building could in no possible way tend to prove what the transaction was

between them." See syllabus of that case. Of course the conversations between plaintiffs and decedents would not be admissible, and it is presumed were not considered by the court. In overruling the motion to strike out the said testimony of the two plaintiffs the court says that upon the hearing it would reject in its consideration all improper evidence which would be stricken out under said motion, if sustained. It is insisted that the court erred in reforming the report of the commissioner and raising the amount found due by the commissioner from four hundred and thirty dollars and seventy-seven cents to eight hundred and fifty-five dollars with interest, and decreeing for the aggregate, one thousand one hundred and forty dollars. In *Ward* v. *Ward,* 21 W. Va. 262, (syl. pt. 1), "A commissioner's report made in a cause rightly referred, on the face of which no error appears, will be presumed by the court as admitted to be correct by the parties, not only so far as it settles the principles of the account, but also in regard to the sufficiency of the evidence upon which it is founded, except in so far and as to such parts thereof as may be objected to by proper exception taken thereto before the hearing; and the court at the hearing is bound to observe this rule of equity practice. And it is error for the court at the hearing to remodel and restate the whole account stated in such report, and enter a decree on its own statement without reference to the account stated by the commissioner or the action of the parties in excepting or not excepting thereto." *Railroad Co.* v. *Vanderwerker,* 44 W. Va. 229. The exception of plaintiffs to commissioner's first report is, "The plaintiffs by counsel, except to the within finding of the commissioner as to the amount which he ascertains them to be entitled under the proofs in this cause, and they insist that the evidence taken in this case shows the plaintiffs to be entitled to a much larger sum of money under their contract than has been found for them by the commissioner." This exception is simply as to the amount ascertained to be due them. How could the court upon this exception decide upon the equity or legality of the principles upon which the commissioner based his finding without going into the particulars of the account? In *Crislip* v. *Cain,* 19 W. Va. 438, it is held that, "Exception to a commissioner's report has to be of the nature of a special demurrer; and if the report is erroneous, the party complaining of the report or excepting thereto must in his exceptions point out

the errors with reasonable certainty, so as to direct the mind of the court to them; and when he does so, the parts not excepted to are admitted to be correct not only as regards the principles, but as relates to the evidence on which they are based." *McCarty* v. *Chalfant,* 14 W. Va. 531. The commissioner had the witnesses before him, the evidence is conflicting, and he evidently found some satisfactory principles upon which he arrived at the amount he ascertained to be the correct sum plaintiffs were entitled to, and under the authorities the report of the commissioner should be given due weight. In *Handy* v. *Scott,* 26 W. Va. 710, it is held: "Where questions purely of fact are referred to a commissioner to be reported upon, the findings of the commissioner, while not as conclusive as the verdict of a jury, will be given great weight, and should be sustained, unless it plainly appears that they are not warranted by any reasonable view of the evidence." *Boyd* v. *Gunnison,* 14 W. Va. 1. If, upon examination of the commissioner's first report, the court was not satisfied with it, it should have been recommitted, with such instructions and directions as the court should deem proper. The first decree of 17th November, 1897, being erroneous, it follows that that of February 28, 1899, being based on the former is also erroneous. As to defendants' exceptions to the commissioner's last report, they were overruled by the court in so far as they went to the report calling the claims reported liens instead of charges after the court had reformed the report in that particular. The first exception is that the amount decreed to plaintiffs is the first lien or charge on the fifty-four acres of which Rebecca Huffman died seized. Whatever recovery plaintiffs may hereafter obtain, being the only claim proven against the estate of Rebecca Huffman, and there being no personalty belonging to the estate, should be the first charge against said fifty-four acres. The three claims of Samuel V. Woods are claims against the estate of Anthony Huffman and his executor. As to the fourth exception, it appears from the record that no assets ever went into the hands of J. W. Robinson, administrator of Rebecca Huffman, and he had nothing to settle. The fourth assignment, as to decreeing interest on interest from the date of the first decree to the last, that will correct itself in restating the account hereafter Seventh assignment, that it was error to enter a final decree ordering a sale of the real estate converted into personalty by the will of Anthony Huffman until the questions arising upon the

validity of the will were determined. It does not appear from the record that any such question has arisen: True there is a paper copied with the record purporting to have been filed in the clerk's office on the 3d day of February, 1899, purporting to be an answer of Israel Poling in his own right and as executor and Elizabeth Jane Poling, Delbert Poling and Cora Poling, but it does not seem to have been even tendered in this cause, and no order or decree is entered taking any notice of it. It is only from this paper that anything appears with reference to a question about the will of Anthony Huffman. The eighth assignment is that the court erred, in reserving the question of the liability of appellant for the timber cut and removed upon the said fifty-four acres of land under the pleadings in this cause. I presume this question will remain a reservation with the court until pleadings are introduced raising some question about it. Nothing appears in any of the pleadings and not in any part of the record except I think one or two of the witnesses were asked something about the cutting of timber. For the reasons herein given the decrees complained of will be reversed, and the cause remanded to the circuit court of Barbour County for further proceedings to be had therein. The cause to be recommitted to a commissioner with such directions as the circuit court may deem proper, especially in relation to the claim set up by plaintiffs under the contract filed with this bill.

*Reversed.*