# CHARLESTON.

### PITTSBURGH STEEL PRODUCT CO. v. HUNTINGTON MASONIC TEMPLE ASSOCIATION.

### Submitted October 16, 1917. Decided October 30, 1917.

1. MECHANICS' LIEN—*Lien Against Realty—Filing of Account.*

   To acquire a valid lien against real estate under §3, ch. 75, Code 1913, the claimant must file with the owner or his authorized agent an itemized account of material furnished a subcontractor, verified by affidavit, and cause the verified account to be served upon the owner within thirty-five days after he ceases to furnish such material, and the account and notice to be admitted to record in the county wherein the real estate is located. Without the concurrence of these essentials, no such lien is acquired. (p. 225).

2. SAME—*Contract—Lien—Statute.*

   Where upon notice that a contractor has failed to prosecute the construction of a building a surety in the bond of indemnity against such failure procures another contractor who agrees to complete the work for the same sum, payable upon estimates as the work progresses, and otherwise upon the same terms and according to the same plans and specifications as required by the

81 W. Va.

first contract, and together with such surety the owner unites in the new contract, and the owner pays the estimates, accepts the building when completed, ascertains the balance due upon a settlement of accounts, and acknowledges liability for such balance, he thereby subjects the property to liens created pursuant to the provisions of chapter 75, Code 1913, and can not exonerate it therefrom upon the ground that he did not engage the services of the contractor who completed the building. (p. 226).

3. SAME—*Account—Return.*

The return of a sheriff or other officer whose acts are of the same dignity, appended to an account such as §3, ch. 75, Code 1913, requires to create a lien on real estate, and admitted to record in the proper office of the county wherein the real estate is located, unless impeached for fraud or mistake, is sufficient, without more, to show service upon the owner. (p. 226).

4. SAME—*Verified Account—Service.*

Service of such verified account, made in any mode provided for in §1, ch. 121, Code, is competent, unless assailed for fraud. (p. 226).

5. SAME—*Lien Statement—Itemization.*

The lien statement of a subcontractor who furnishes material and labor for the construction of a building will not be deemed insufficient for want of itemization under the statute merely because the account is for a lump sum expressly stipulated for in his contract with the principal contractor. (p. 227).

6. SAME—*Account—Time.*

Where from such an account, considered as a whole, the year in which the material was furnished is ascertainable with reasonable certainty, and the month and day for each item is given, the account will constitute a sufficient compliance with the statute, although the year is omitted opposite or above the particular items in the account. (p. 229).

7. SAME—*Personal Decree Against Contractor—Assumption of Liability.*

To warrant a personal decree in a mechanics' lien suit against the principal contractor for a debt incurred by a subcontractor for materials, it must affirmatively appear that the principal contractor assumed liability therefor in such manner as legally bound him to pay the debt. The mere relation of the parties to the construction contract, without more, does not suffice. (p. 231).

8. EQUITY—*Exceptions to Report of Commissioner—Sufficiency.*

Where questions of fact are referred to a commissioner, exceptions to his report must point out the errors complained of with

reasonable certainty, so as to direct the mind of the court and the opposite party to them; otherwise the findings are admitted to be true. (p. 231).

Appeal from Circuit Court, Cabell County.

Proceeding by the Pittsburgh Steel Products Company against the Huntington Masonic Temple Association, Moore Construction Company and others claimants. Decree for part of claimants, and the Moore Construction Company appeals.

*Affirmed in part. Reversed in part. Remanded.*

*Geo. S. Wallace* and *Philip P. Gibson,* for appellant.

*Williams, Scott & Lovett,* for appellees Huntington Lumber & Supply Co. and Parker.

*Meek & Renshaw,* for appellees Thomas H. and H. C. Harvey.

LYNCH, PRESIDENT:

The object of these proceedings is to determine the legal sufficiency of lien claims for material and labor to participate in a fund of $5,000 substituted in lieu of the property on which was erected the building for the construction of which it is alleged the material and labor were used. The Iback Construction Company contracted with the Huntington Masonic Temple Association, the owner of the property, to construct a seven-story re-enforced concrete masonic temple and to furnish the material and labor necessary therefor, in consideration of $121,500, to be paid upon estimates made by the architect. J. E. Berry, a member of the contracting company, having with its consent assumed the sole responsibility for the contract obligation, offered and the Masonic Temple Association accepted the Citizens Trust & Guaranty Company as surety in an indemnity bond in the penalty of $25,000, conditioned upon the completion of the construction work in conformity with the plans and specifications adopted for that purpose. Because Berry failed or was unable to prosecute the work with due diligence, the indemnity company, upon notice to it by the Masonic Temple Associa-

tion, entered into a contract with the Moore Construction
Company to complete the work undertaken by him, upon the
same consideration and payments and according to the terms
of the agreement with the Iback Construction Company.  In
the prosecution of the work to completion, the Moore Con-
struction Company, the principal contractor, and C. C. Wam-
baugh, a subcontractor, each on his own account and credit,
purchased of the lien claimants material some part or all of
which was used in the construction work.  The liens, pay-
ment of which out of the $5,000 fund is sought, are asserted
by H. C. and T. H. Harvey jointly, P. C. Parker, and the
Huntington Lumber & Supply Company, the liens of the
latter being for material sold directly to the Moore Construc-
tion Company and for material sold to Wambaugh.  On each
of these several accounts a balance only remains unpaid.

The objection raised by appellant, one that lies at the very
foundation of each claim, is that the Moore Construction
Company does not occupy the position of principal contrac-
tor or subcontractor in relation to the Masonic Temple Asso-
ciation within the meaning and intendment of chapter 75 of
the Code, and that therefore the property involved is not
subject to the liens asserted.  Section 3 of that chapter, de-
voted primarily to the procedure by means of which liens
upon property may be obtained, is intended really to pro-
tect those who furnish material or perform labor under a
contract with a principal contractor or his subcontractor for
the erection of any structure provided for in a contract be-
tween an owner or his authorized agent and the principal
contractor.  The Citizens Trust & Guaranty Company did
employ the Moore Construction Company; but the Masonic
Temple Association joined in executing the contract, under
which the building was completed on the lot the legal title
to which is vested in the association.  After stating by way
of recitals the contract with the Iback Construction Com-
pany, the substitution of Berry instead of the firm, his fail-
ure to complete the building, notice thereof to the surety,
and the surety's procurement of the Moore Construction
Company to finish the work, the contract contains the ma-
terial provision that the construction company agrees to

complete the building in accordance with the terms of the Iback contract for the sum of $121,500, payable in accord-ance with that contract. To the new contract so secured the Huntington Masonic Temple Association affixed its corpor-ate name and seal; and, in addition to joining as a party, it accepted the building as finally completed, paid part of the consideration therefor as the work progressed, made final settlement and adjustment of the accounts, acknowledged its liability to the contractor for the balance found due, and otherwise acted as if it had actually procured the completion of the building through the agency of the last contractor. In legal contemplation, therefore, the property improved became subject to any liens obtained in the manner author-ized by the mechanics' lien law. To disallow or reject the claims on this ground, under these circumstances, would tend to defeat the obvious purpose of the act, and work in-justice, where protection was the ultimate object to be attained.

A second ground assigned for reversing the decree, in so far as it allowed the claim of the two Harveys as liens charge-able against the fund in question, is that they accepted in payment an order drawn by the Moore Construction Com-pany upon the Miller Supply Company for the amount then claimed to be due on the account, under some arrangement whereby the supply company became sponsor for the con-tractor. What the arrangement actually was is not dis-closed; nor does it appear affirmatively in any conclusive manner whether the Harveys consented to rely for payment exclusively upon the credit of the drawee. There was some correspondence which, considered alone, may indicate an in-tention to rely solely upon the order. But H. C. Harvey's positive statement to the contrary, not in anywise contro-verted, overcomes any inferences based upon that paper. The mere acceptance is not sufficient. It does not imply a purpose to waive resort to an action on the account against the purchaser or to a lien under the statute. Such a paper certainly stands on no higher ground than a note, draft or other similar paper, which, as held in *Cushwa* v. *Association,* 45 W. Va. 490, will not operate as a waiver of the right to

proceed for the collection of the debt against the party liable therefor, except when the parties so understood and agreed at the time of the acceptance. *Bodley* v. *Denmead,* 1 W. Va. 249; *Bank* v. *Trigg Co.,* 106 Va. 327; 27 Cyc. 267, 272.

Whether these claimants obtained their lien within the time required by the statute depends upon the testimony of H. C. Harvey and the approval of the Moore Construction Company endorsed on the account. Harvey says the account is correct, and the items specified therein entered into the construction of the building. On the first point of the statement he is corroborated by the endorsement, and, as to both, by the testimony of W. E. Moore, president of the Moore Construction Company, who, when asked to state whether or not the account was correct in amount, replied, "to the best of my knowledge the account is about right. I can not say as to dollars and cents, because I did not see everything that went into it; but I remember it was about $400, something like that". And he says the material charged in the account was such as was required to complete the building, and that it was used in its construction. But it is urged that the last two items, amounting to $3.57, were tacked to the account merely to bring it within the thirty-five days allowed by the statute for giving notice to the property owner. The lapse of time between the dates of these items and the next preceding items was approximately six months. But that discrepancy or difference is not sufficient to justify the exclusion of these two items, unless it appears that they were tacked on solely for the purpose indicated; and there is nothing sufficient to create more than a mere suspicion of a fraudulent intention to effect that object. While the proof leaves some room for doubt whether the material represented by the two charges did actually enter into the construction of the building, we think the evidence, considered in its entirety, is sufficient to sustain the allowance of the items over this objection.

The objection to the P. C. Parker account is that it is not itemized as required by the statute. The contract between him and the Moore Construction Company was for painting, varnishing and glazing, for which services and material he

was to receive a lump sum of $775. This is the larger of the two items in the account. Where the charge is for a gross sum under a contract therefor in the aggregate, an itemization is not necessary. *Bateson & Co.* v. *Baldwin Forging & Tool Co.*, 75 W. Va. 574; Rockel on Mech. Liens §114, citing *Edwards* v. *Derrickson*, 4 N. J. L. 39; *Shaffer* v. *Hull*, 2 Clark (Pa.) 321; *Young* v. *Elliott*, 2 Phila. (Pa.) 352. The same is true also of the other item of $154.30 for extras, contracted for at that amount. Furthermore, this charge is protected by the well recognized rule as to the application of partial payments on an open account, to the effect that where such payments are made without direction as to their application the creditor may apply them where he may elect, and, if he does not so elect, the law will apply the payments to the discharge of the earlier items. *Bateson & Co.* v. *Baldwin Forging & Tool Co.*, *supra.* The statute does not permit a contractor or subcontractor to claim a lien for any account, or item of the account, not within nine months prior to the acquisition of the lien. But payments were made on the Parker account sufficient to discharge these older items, and which, unless otherwise directed, would be applied to them.

There is, however, another objection, later discussed, which, unless cured or waived, is fatal to the allowance of a lien based on this account. The petition avers that within thirty-five days after the claimant ceased to perform the labor and furnish the material he filed with the owner an itemized account of both labor and material, verified by affidavit, and "caused it to be duly served upon the Huntington Masonic Temple Association". But to the account is not appended the return of service by any officer, or of any private individual verified by affidavit. Nor is there any proof to show that it was served, or that the association had notice of the account or of an intention to acquire a lien under the statute. Besides, the burden of proving that the notice was duly served was cast upon the claimant by the denial contained in the answer of the association that it was not served at all. Such a notice is a positive requirement of the statute. It is of the very essence of the lien. Unless there is such a return by a duly authorized officer, or the service otherwise appears

upon proof, the claimant acquires no right to charge the property. *Davisson* v. *Bailey,* 68 W. Va. 681. However, as later noted with respect to all the liens asserted, the commissioner found that the required notice of the Parker lien had been duly served; and no exception to his report controverts that finding.

The Huntington Lumber & Supply Company claims the right to charge the fund with the payment of two accounts, one for material furnished by the claimant directly to the Moore Construction Company and the other for material furnished to C. C. Wambaugh, its subcontractor. The balance claimed to be due upon the first account is $859.81, which it is conceded is subject to a credit of $144.58 not allowed by the decree, thereby reducing the amount to $715.23. Both of these accounts are subjected to the criticism that they are not itemized as required by the statute. But they are itemized as so required except in one particular. They show only the different dates in each month and the different months, but not the year in which the various items were contracted. Is this omission fatal? It is not if upon the whole record *quoad* these claims substantial compliance with all itemization requirements of the statute appears. The papers prepared for service upon the owner purport to notify it that the claimant furnished the articles mentioned in the first account to the Moore Construction Company, the principal contractor, and that the articles mentioned in the second it sold to a subcontractor, and that the material in both was furnished "on the following dates", and was used by the construction company in the erection of the building. The notice and verification appended to the Moore Construction Company account bear date respectively August 26 and 27, 1913; and the notice and verification appended to the Wambaugh account bear the same date, namely, August 15, 1913.

To support the validity of these lien claims upon the question of itemization in respect to dates, it suffices to cite *Plumbing & Supply Co.* v. *McGuffin,* 75 W. Va. 78, and *Lumber Co.* v. *Railway Co.,* 69 W. Va. 682, in the first of which it is held that an account by items, under §3, ch. 75, Code, which shows the month and dates of the first and last items,

constitutes a sufficient compliance with the statute, "although the year of the first and some of the subsequent items does not appear opposite or above the date of the items in the account"; and in the second, that the just and true account of the amount due, required by section 4 to preserve a lien for labor or material furnished given by section 2, if the contract therefor be made directly with the owner of the property, need not state the account by items giving the year, month and day, but it is the better practice to do so. See also *Grant* v. *Cement Co.*, 58 W. Va. 162 which holds that in determining the sufficiency of such a claim the account proper and the sworn statement appended to it may be read together and considered as a whole; and *Blowpipe Co.* v. *Spencer*, 40 W. Va. 698, holding all that is required is that enough should appear on the face of the statement to point the way to successful inquiry. Each of the accounts asserted by the Huntington Lumber & Supply Company, read separately, furnish sufficient data to bring them within the principles laid down in these cases, and constitute sufficient compliance with the statute in this respect.

But while each of the several petitions by the lien claimants contains averments to the effect that the accounts became liens upon the property of the Masonic Temple Association by virtue of the affidavit of verification, the notice served upon the property owner, and recordation in the office of the clerk of the county court, the answers· thereto deny in general terms that the claimants did obtain liens upon the property, because of their failure to comply substantially with the statutory requirements essential to valid liens. Notice and recordation are elements of prime necessity. Both are indispensable. Without either, there can be no lien. Excepting the Harvey claim, there is not, as observed, any positive or competent proof showing conformity with the procedure required to perfect liens under the provisions of chapter 75, Code, by formal notice served ·on the owner of the property, and recordation of the account in the office of the clerk of the county court of the county wherein the property is located. The omission of either of these statutory requirements renders abortive an effort to acquire

liens under that chapter.  But the report made by the com-
misioner, pursuant to the mandate of the reference order to
investigate and ascertain whether the claimants had per-
fected their lien claims in the mode and by the procedure so
prescribed, found that the Harveys, Parker and the Hunt-
ington Lumber & Supply Company had severally acquired
liens by a strict adherence to the statute; namely, that each
of the accounts had been itemized, verified, served upon the
owner, and admitted .to record within the time required, al-
though, so far as can be ascertained upon looking into the
record, the notice was not served or the account recorded.
Whether or not the Moore Construction Company or the
Huntington Masonic Temple Association intended to chal-
lenge the correctness of the report in these respects, by ex-
cepting to its findings, that intention is not disclosed by the
exceptions in which they joined.  If that was the object
they had in view, they failed to reveal it.  If it is desired to
impress upon a court the duty to review errors in the report
of a commissioner, the exception must be distinct and ex-
plicit, and contain a precise allegation of insufficiency, some-
thing to direct immediate attention to the subject of the com-
plaint, that the adversary may see clearly what he has to
meet and the court what it has to decide.  *Barbour* v. *Tomp-
kins*, 31 W. Va. 410; *Stewart* v. *Stewart*, 40 W. Va. 65; *Pol-
ing* v. *Huffman*, 48 W. Va. 639.  The mere general denial, that
none of the liens ''conform to the statutes in such cases made
and provided and for other reasons apparent upon the face of
the liens in the evidence adduced before the commissioner'',
does not suffice · to direct attention to the departure from
statutory requirements, within the rule announced in the
cases cited.

Appellant complains because the court rendered against it
a personal decree for the balance found due each of the sev-
eral lien claimants, including the Wambaugh account in the
amount decreed to the Huntington Lumber & Supply Com-
pany.  Our statute, §12, ch. 75, Code, authorizes a personal
decree in favor of mechanics' lien creditors ·for the amount
of their claims against any party as to whom they .may be
established.   The liability, however, must be established

against the party decreed against.   He must be bound to pay
it.   But the Wambaugh account was not established as one
against the Moore Construction Company, between whom and
the Huntington Lumber & Supply Company there was no
privity of contract as to that account.   The claimant did not
deal with or upon the credit of the principal contractor.   It
dealt only with Wambaugh; and, while it may under the
statute obtain a lien on the fund in which the Moore Con-
struction Company has an interest, that company did not
contract the debt nor guarantee its payment, so far as the
record before us discloses.   *Augir* v. *Warder,* 68 W. Va. 752,
says it is error to render a personal decree in a mechanics'
lien suit in favor of plaintiff against the owner, if there is
no privity of contract between them.   Is the rule different
between the principal contractor and a creditor of his sub-
contractor?   The rule laid down by the authorities in gen-
eral terms is that there can be no personal judgment or de-
cree in such a suit unless it appears that as to the particular
account there was some contractual relation between the
plaintiff and the defendant against whom the liability is as-
serted.   That is the rule in many states, and it meets our
approval.   The variety of decisions upon this phase of the
inquiry indicates general acquiescence in the correctness and
application of that rule.   No decision found upon this in-
vestigation denies its applicability as between a lien claim-
ant and the owner, and none of the many cases examined
applies a contrary rule as between such a claimant and the
principal contractor.   The case of *Ivory* v. *Michel,* 33 Mo.
401, furnishes a practical illustration; and that case is typ-
ical of many others that might be cited.   It expressly denied
the right to such a decree against the principal contractor
in favor of a claimant of a subcontractor.   Barnett and
Weber engaged to erect seven buildings owned by Coste and
others.   Foster had a contract with the principal contractors
to do the brick work, and the plaintiff contracted with Foster
to furnish the brick, and for a balance due on the account
obtained a mechanic's lien and sought to enforce it.   But,
adhering to the rule above stated, the court reversed the
judgment in his favor because it was not only against the

debtor of the plaintiff but also against the principal contractor and the owners of the buildings. These facts bring the case clearly within the principle announced in the Augir case. For a collation of the authorities, see note in 22 Ann. Cas. 130.

The decree complained of is therefore reversed in so far as it fixed a personal liability upon the Moore Construction Company for the Wambaugh account and also in so far as it failed to allow the credit of $144.58 on the account of the Huntington Lumber & Supply Company; but otherwise the decree is affirmed, and the cause remanded for further proceedings.

*Affirmed in part. Reversed in part. Remanded.*