(Decided February 4th, 1861.)

---

# George S. Koontz *vs.* Elizabeth D. Nabb.

A married woman, having separate estate, cannot affect that separate estate unless the obligation sought to be enforced presents, upon its face, some evidence of the intent to charge the estate, or there be evidence, *aliunde*, tending to prove such intent.

English decisions, made subsequent to the period of our separation from the British Empire, though entitled to great respect, are not to be received as *absolute authority* in this State.

APPEAL from the Equity side of the Circuit Court for Howard County.

This bill was filed, on the 9th of October 1857, by the appellant against the appellee, to make the separate estate of the defendant, who was a married woman, responsible for a promissory note for $175, signed by her, payable to the order of the complainant, at six months, dated the 11th of March 1857, and delivered to the complainant.

The facts of the case, as disclosed by the bill, answer and evidence, are, in brief, these:—The defendant, Mrs. Nabb, was possessed of about 371 acres of land, conveyed to her by two deeds, in 1855 and 1856, in one of which the conveyance is to her, "her heirs and assigns, to and for her and their own separate use and estate, and to be free and clear of all right and estate and liabilities of her present or future husband, and *to be at her own disposal, by deed or otherwise;*" and in the other, to her, "her heirs and assigns, to and for her own special use, benefit and estate, to be by her sold, willed *or otherwise disposed of, as she may elect,* or will, to be free and clear of all legal liabilities of her said husband, present and future, or any of his present or future engagements." Sometime in September 1856, the complainant, Koontz, sold to George W. Nabb, *the husband* of the defendant, a horse for $175. The horse was delivered but no money paid, the said George giving Koontz his promissory note for the purchase money, payable in six months. In February 1857, the said George absconded from the State, largely in debt. On the 11th of March 1857, a day or two before this note became due, Koontz went to the residence of Mrs. Nabb, in company with one Cassidy, for the purpose of making some arrangement for securing the payment of the same, and proposed to deliver up the note and take back the horse. This Mrs. Nabb declined to do, as she wished to retain the horse. An agreement was then made between Koontz, on the one

part, and Mrs. Nabb and her son on the other part, that Mrs. Nabb should give to Koontz her own note for $175, at six months, guaranteed by her son, and that Koontz should transfer to Mrs. Nabb, the note of her husband. This was accordingly done on both sides. Mrs. Nabb signed the new note, and her son wrote upon it a guarantee of payment on maturity, and then delivered it to Koontz. *Cassidy*, in behalf of Koontz, testified that the transfer of the note of her husband was the true consideration for the note of Mrs. Nabb. *Caleb Dorsey*, who was present at the time, in behalf of Mrs. Nabb, testifies that she distinctly refused to pay her husband's note, or become responsible for it, or for any of his debts, and that the only consideration for the note in question was the *sale*, by Koontz, to her, of the horse which he had previously sold to her husband, and for which he had his note. The horse was subsequently attached as the husband's property, by Cassidy, as one of his creditors. The court below (BREWER, J.) delivered the following opinion, upon passing the decree dismissing the bill:

"This case, being ready for hearing, was submitted on both sides on notes. Mrs. Nabb, being a married woman, executed and delivered to the complainant a promissory note, which is the foundation of the present bill.

"Without entering into the consideration of the note, the case may be decided upon the liability of the separate estate of Mrs. Nabb for its payment. She has, by the deeds conveying this property to her, a right to dispose of it or to charge it in any form she may think proper, but the question is, whether the property of a *feme covert*, so situated, is bound by all her general contracts, or whether, to bind it, it be not necessary for her to make an express stipulation to that effect? *Chancellor Johnson*, in the case of *Conn vs. Conn*, 1 *Md. Ch. Dec.*, 216, in speaking of the cases in the Court of Appeals of Maryland on this subject, says: 'In all these cases it will be seen, that there was a clear engagement, on the part of the wife, to charge specifically the property settled to her separate use; and no allusion is made, in either of them, except in the case of 7 *H. & J.*, 296, to the effect

of a contract on the part of the wife, without such specific charge, regarding her simply as a *feme sole*,' in which latter case, the court expressly waived any decision of the question. And the *Chancellor* again says, 'that before her separate estate can be bound, it must be shown that her contract was made with direct reference to such separate estate, and that she is not to all intents and purposes, as to it, to be regarded as a *feme sole* and bound by *any form of contract* into which she may be pleased to enter, whether made with respect to her separate estate or not.' This case, as to the evidence of *intention to charge*, is not stronger than the case of *Conn vs. Conn.* The *Chancellor* seemed, however, to think, that *parol proof* of the intention to charge might be taken, on the strength of the case of *Gray vs. Crook*, 12 *G. & J.*, 236. In that case the court gave no opinion. It was not a case in equity, but a suit at law, on an *express promise to pay after the death of the husband*, the circumstances of the existence of the separate estate, the insolvency of the husband at all times, and the purchase by the wife, constituting a *moral consideration* for the promise. The case in 11 *Md. Rep.*, 492, is a case of specific charge by deed, not applicable, I think, to the present case. Though the decisions of the Chancery Court are not binding on the Circuit courts, as those of the Court of Appeals are, yet its decisions, as a court of a much more extensive territorial jurisdiction, have generally been followed. I think, moreover, that the decision of the *Chancellor* is right in principle."

From the decree dismissing the bill the complainant appealed.

The cause was argued before TUCK, BARTOL and GOLDSBOROUGH, J.

*Thos. Donaldson* for the appellant:

The decree of the court below, dismissing the bill, was based solely upon the opinion that a promissory note, signed by a married woman, does not bind her separate estate without an express stipulation to that effect. It is submitted that

this opinion is erroneous, and that the note was, in itself, a binding obligation, and a court of equity will hold her separate estate liable for its payment, even in the absence of special facts, showing an express intention of contracting with relation to that separate property, and that in the present case there are facts showing such express intention. The recent decisions in England and in this country, all tend to sustain the position, that a married woman, having separate estate with the general power of disposition, is to be regarded, in reference to that estate, as a *feme sole*, and that such estate is liable for general contracts and engagements. *Macqueen on Husband & Wife*, 300, 301, in 66 *Law Lib.*, 91. 17 *Ves.*, 365, *Bullpin vs. Clarke.* 3 *Mylne & Keene*, 209, *Murray vs. Barlee.* 3 *Madd. Ch. Rep.*, 387, *Stuart vs. Kirkwall.* 4 *Russell*, 112, *Field vs. Sowle.* 1 *Craig & Phillips*, 48, *Owens vs. Dickenson.* 3 *Beav.*, 489, *Crosby vs. Church.* 2 *Story's Eq.*, sec. 1400. 12 *G. & J.*, 236, *Gray vs. Crook.* 11 *Md. Rep.*, 492, *Cooke vs. Husbands.*

*Chas. E. Phelps* for the appellee:

Before the separate estate of a married woman can be charged with her contracts, the contract itself, upon its face, must show an intention to charge it, or it must be shown that it was made with *direct reference* to her separate estate. Such is the law as decided by the chancellor in the case of *Conn vs. Conn*, 1 *Md. Ch. Dec.*, 212. The case of *Cooke vs. Husbands*, 11 *Md. Rep.*, 492, though containing some general expressions looking to the support of the views entertained by the appellant, yet is not a *decision* upon the precise point raised in the present case. The decisions in England, prior to our Revolution, were undoubtedly to the effect that the separate estate of a married woman is not, in equity, liable for the payment of her general personal engagements. 2 *Story's Eq.*, sec. 1398. Whatever may have been the more recent decisions, they are not binding authorities here, and have not been adopted by any express decisions of our courts. The only express decision upon the question, is that

of the chancellor, in *Conn vs. Conn,* and, it is submitted, that that decision ought to be now adopted by this court, as the law of this State. It cannot be pretended that the note in this case can be brought within the principle of that decision. There is nothing upon its face showing an intent to charge her separate estate, nor is there any thing in the facts and circumstances of the transaction tending even to show that she made this contract *with reference* to that estate.

GOLDSBOROUGH, J., delivered the opinion of this court:

We are satisfied, from an examination of this case, that the decree appealed from is sustained by the reasons assigned in the opinion of the judge of the Circuit court, and therefore the decree ought to be affirmed.

In addition, however, to the reasons assigned by the learned judge below, we would state that we have carefully examined the decisions in England and in this country, and have reached the conclusion that a married woman having a separate estate, cannot affect that separate estate, unless the obligation sought to be enforced presents upon its face some evidence of the intent to charge the estate, or there be evidence *aliunde* tending to prove such intent. This question was, on many occasions, brought to the consideration of the Chancery court in England, from an early period, in its equity jurisprudence, and numerous decisions were made in conformity with our view of the law. Nor was that view disturbed in England, until the case of *Hulme vs. Tenants,* 1 *Brown's Ch. Cases,* 16, which occurred in 1778, followed by the cases of *Whistler vs. Newman,* 4 *Vesey, Jr.,* 130, and *Mores vs. Huish,* 5 *Vesey, Jr.,* 692, decided by *Lord Loughborough.* These cases are succeeded by many others, after Lord Elden became Chancellor, in which he restored the law to its first and ancient principle. In the case of *Parkes vs. White,* 11 *Vesey, Jr.,* 209, he reviewed all the cases, and strongly intimated that the decision in *Whistler vs. Newman* was in opposition to all the authorities for a century. It is true that this

doctrine has undergone much change by the decisions recently made by Lord Brougham and Lord Cottenham; (see *Lewin on Trusts and Trustees, page* 516,) yet we are justified in disregarding these decisions, by resorting to the rule laid down in the case of *The Mayor and City Council of Baltimore vs. Williams,* 6 *Md. Rep.,* 264, in which this court said, (referring to the construction of the *Statute of Elizabeth, Ch.* 4,) the position of the counsel is correct, if, by the English doctrine, which is to prevail here, is meant such as was settled by judicial decisions previous to our separation from the British Empire; that subsequent decisions, although entitled to great respect, are not to be received as absolute authority. This last position was taken by *Chief Justice Marshall,* in *Cathcart vs. Robinson,* 5 *Peters' Reports,* 280, in which he concedes, "that the received construction of the English Statutes, at the time of the Revolution, may very properly be considered as accompanying the Statutes themselves, and forming an integral part of them."

This question of a *feme covert's jus disponendi* of her estate, has been, upon several occasions, considered by this court, and in the case of *Cooke vs. Husbands, et al.,* 11 *Md. Rep.,* 503, the court say: "We may consider it unsettled as late as 1849." And though the court, in that case, use the following strong language: "Therefore, following the decisions, which, under our institutions, it is the duty of this court to respect as authority, we are of opinion, that a *feme covert* may act in reference to her separate estate as a *feme sole,* when the settlement contains no limitations on the subject, on the principle that the *jus disponendi* accompanies the property, unless restrained in terms, or by the manifest intention of the instrument;" yet the facts in that case did not justify the court in extending their decision so as to embrace the question now under consideration. Reverting to the conclusion we have arrived at, that a married woman having a separate estate, cannot affect that separate estate, unless the obligation sought to be enforced presents upon its face some evidence of the intent to charge the estate, or there be evidence *aliunde* tending to prove such intent, we find

· no such intent upon the promissory note in this case, nor are there any facts, in the evidence, from which such an intent may be inferred.

(Decided February 5th, 1861.)