### HEMPFIELD RAILROAD COMPANY vs. THOMAS THORNBURG.

January Term, 1866.

1. A debtor paying money to a creditor is entitled to have it placed to the credit of a particular claim ; but if he makes no selection the creditor can apply it where he chooses. If neither debtor nor creditor has made an application, the court will apply it to the claim for which the security is most precarious.

2. T. sold a parcel of land to the H. R. R. Co., for 300 dollars, and the right of way through his land for 200 dollars per acre, amounting to 1,225 dollars ; he also agreed with the company to remove certain buildings in the line of the proposed railroad for a compensation of 2,275 dollars; the company paid only 2,012 dollars and 50 cents and completed its road through the land, and T. brought suit to enforce his vendor's lien.   HELD :

> That the decree of the court below, applying the amount paid by the company to the liquidation of the amount agreed to be given for the removal of the buildings, and declaring that T. had a lien on the lot sold, and on the right of way, for the payment of the sums due thereon respectively, must be affirmed; but before any sale should take place under the decree, T. should be required to execute a good and sufficient deed to the company.

This was an appeal from the decree of the circuit court of *Ohio* county.   The facts are substantially stated in the opin- ion of the judge deciding it.   The deed referred to, the incompleteness of which he states to be sufficient ground for reversing the decree, was dated November 16th, 1859, and purported to be "between *Thomas Thornburg* of the first part and the *Hempfield Railroad Company* of the second part." It was signed thus, "Witness the following signature and seal.   *Thomas Thornburg*, [seal,] *Amanda Thornburg*, [seal.]" It was acknowledged by both *Thornburg* and wife in the usual mode, but the acknowledgement of the latter pur- ported to be of a deed dated February 23rd, 1816.

*He was absent on account of illness, and *N. Harrison*, judge of the IX circuit was called to the bench.

*James S. Wheat*, counsel for the appellant, argued the following points: That the circuit court erred in applying the credit of 2,012 dollars and 50 cents, exclusively to the liquidated damages. Lomax's Dig., vol 1, page 216. That the decree in the court below did not ascertain and determine the title or estate of the *Hempfield Railroad Company* in and to the parcels of land therein mentioned, but simply directed their sale in the mode prescribed: when the company in fact acquired nothing more under the contract with *Thornburg*, than the right of way over the lands in question; the title still being in *Thornburg* subject to the easement granted by him. Code of Va., chaps. 56 and 61; Amer. Law Rep., Oct., 1855. That the deed from *Thornburg* filed with the papers was defective, his wife not being a party to it, nor having properly acknowledged it.

*Lamb & Paull* and *A. B. Caldwell*, for the appellee.

To show that said 2,012 dollars and 50 cents was correctly applied, it is sufficient to refer to 2 Greenl. on Evidence, sections 529, 531, 532 and 533.

That a vendor of real estate, (as well where the title is retained as where it has been conveyed,) has a lien upon the same for the amount of the purchase money, is laid down by all the elementary writers, and is too well settled in this State to be again drawn in question. Judge Story in his Equity Jurisprudence, vol. 2, page 444, sec. 1218, says: "The lien of the vendor of real estate for the purchase money is wholly independent of any possession on his part, and it attaches to the estate as a trust, equally, whether it be actually conveyed, or only contracted to be conveyed." Again he says, in section 1219, same vol. and page: "The principal upon which courts of equity have proceeded, in establishing this lien, in the nature of a trust, is, that a person who has gotten the estate of another, ought not, in conscience, as between them, to be allowed to keep it, and not pay the full consideration—money." Again he says, in sec. 1217, same vol., page 240: "The usual course of enforcing such a lien, is by a sale of the property to which it is attached.

1 Washburn on Real Property, 533, sec. 1, says: "The vendor's lien is a security for the payment of the purchase money, and treated in the light of an equitable mortgage"— and at page 536, sec. 7, of same vol., Washburn says: "This equitable mortgage, which equity raises by way of lien, in favor of a vendor, for the payment of the purchase money, rests upon the ground, that the purchaser in such case is trustee of the premises for the vendor, until the purchase money is paid."

The decisions in this State, as well in cases where the property has been actually conveyed, as where it has only been contracted to be conveyed, fully sustain the doctrine laid down by elementary writers, but inasmuch, as by a statute of this State, passed before the execution of the contract in this suit, (see Code, chap. 119, sec. 1,) the equitable lien of the vendor was abolished, we confine our citations to such decisions only as recognize the vendor's lien, in cases where, as in this case, the vendee has retained the title as a security for the payment of the purchase money.    Before doing this, however, (in view of the statute just referred to,) we note the distinction between the implied lien, where the legal title has been parted with, and the right of the vendor who has retained the title, to enforce a specific execution of the contract.    This distinction is very clearly laid down in the case of *Adams* vs. *Stillwell*, 14 Ohio, 20.    "The lien of the vendor results from the fact that equity holds the vendor clothed with the legal title, a trustee of the vendee for the payment of the purchase money.    Before the legal title passes from the vendor, his remedy is on the contract, to enforce a specific performance of the contract, or, in an action at law.    The vendee cannot compel a relinquishment of the legal title, until he clothes himself with equity by the payment of the purchase money."

The first case in *Virginia*, in which it was expressly decided that the vendor of land, sold and in possession of the vendee, but not conveyed, had a lien on it, so as to secure the payment of the purchase money, was that of *Cole* against *Scott*, 2 Wash. Rep., 141.    To the same effect are all

264        COURT OF APPEALS OF WEST VIRGINIA.

Jan'y Term,        Hempfield R. R. Co. vs. Thornburg.        1866.

of the following cases: *Hanna* vs. *Wilson,* 3 Gratt., 243; *Knisely* vs. *Williams et als.,* 3 Gratt., 265; *Lewis et als* vs. *Caperton's ex'or et als,* 8 Gratt., 163; *Stewart's ex'ors* vs. *Abbott et al.,* 9 Gratt. 252; *Young* vs. *Mauck et als.,* 15 Gratt., 300.

In the case of *Lewis et als.* vs. *Caperton's ex'or et. als.,* judge *Allen* in delivering the opinion of the court, decides that a vendor who retains the title until the purchase money is paid, "stands on higher ground than a vendor who, having parted with the legal title, is seeking a court of equity to set up and give effect to the implied lien for the purchase money. Holding the legal title, he is not claiming an equity, and he cannot be required to surrender the legal title until the purchase money is paid, and that his lien for the purchase money is paramount to all other incumbrances, and must be first paid out of the proceeds arising from a sale of the land." In the late case of *Young* vs. *Mauck et als.,* cited above, the court says: "As between the vendor and vendee, the latter (where the title is retained,) occupies the position of a mere tenant at sufferance to the former. If the vendor, where the legal title is retained, elect to go into chancery, the correct proceeding is a bill for the specific execution of the contract, by requiring the vendee to complete his purchase by paying the price, or otherwise have the land sold at his risk, to pay the purchase money."

In view of these decisions, it is clear, that the appellee has a lien upon said lot for the payment of said purchase money. Has he a lien also upon said right of way? It is respectfully submitted that he has. Judge *Story* tells us, that the origin of the doctrine of the vendor's lien may be ascribed to the Roman law, from which it was imported into the equity jurisprudence of *England;* that by the Roman law it was applied to the sale of both movable and immovable property: 2 Story, Eq. Ju., page 443, sec. 1221. Again he says: "The lien created upon an estate by the deposit of the title deeds as security for money, is very similar to a vendor's lien. So, liens may be created on the purchase money due on the sale of an estate, in favor of a vendee, if it is agreed that the money shall be deposited in the hands

of a third person, to be applied in discharge of prior incumbrances, to the extent of such incumbrances; that there is indeed no difficulty in equity in establishing a lien, not only on real estate, but on personal property, or on money in the hands of a third person, wherever that is a matter of agreement, for the reason, that such an agreement raises a trust. Thus, if a tenant for life of real estate should agree to set apart, and pay the whole or a portion of the annual profits of that estate, to trustees for certain objects, it would create a lien in the nature of a trust on those profits against him, and all persons claiming under him." 2 Story's Eq. Ju., sections 1230 and 1231.

Why, then, may not a vendor of a right of way or easement, have a vendor's lien thereon, as well as the vendor of real estate or mere personal property, for the payment of the purchase money? The right of way, is an incorporal hereditament, and passes originally only by grant. *Washburne*, in his 2nd volume, page 27, says, "An easement is an interest in land, (being the right to use the same for a special purpose,) of another, and can be created only by grant, implied grant, and prescription."

*Pierce*, on American Railroad law, lays it down, that the right of a railroad company to use its road as a common carrier of goods and persons, is valuable as a source of revenue, and has the incidents of property. It is the private property of the company, which the legislature would have no power, in the exercise of the right of eminent domain, to appropriate to other public uses, without making compensation to the company. This right of the company, being then in its nature property, would seem to be liable to be subjected to the payment of its debts, either by a voluntary disposition, or a compulsory process of law." Surely, then, it is liable for the consideration—money, which is the price of its very existence.

That the enforcement of the vendor's lien against the right of way of a railroad company, is not against the public policy of the State, is manifest from the fact that the legislature, in authorizing proceedings by a company, to

take land without the owner's consent (see Code, chap. 56, page 325, sections 6 to 15, inclusive,) expressly provides, that the company shall have no right to possession of the land until the report or judgment, ascertaining a just compensation for the land is satisfied.

BROWN, J. This is a suit, by the vendor against the vendee, to enforce the specific execution of a contract, in writing, for the sale of real estate, and to subject the property in the possession of the vendee (but not conveyed,) to a sale for the payment of the purchase money.

The record discloses, that on the 8th of March, 1854, the Hempfield Railroad Company, the appellant, being desirous to construct its road through the lands of Thomas Thornburg, the appellee, entered into a contract in writing with said Thornburg, whereby it agreed to purchase from the latter a certain lot of ground, (which was ascertained by survey subsequently made to contain one rood and thirty-three perches,) for the price of 300 dollars; also the right of way through the lands of said Thornburg, at the rate of 250 dollars per acre, (ascertained by survey subsequently made to contain four acres, three roods and twenty-four perches,) amounting in the aggregate to 1,225 dollars, and agreed to pay said Thornburg 2,275 dollars, as compensation for the removal of his buildings, to-wit: his dwelling house and barn, off of said right of way. That by the terms of said agreement, the said company obligated itself to pay in cash the whole of said money, to-wit: said 300 dollars for the lot, said 1,225 dollars for the right of way, and said 2,275 dollars for the removal of said buildings, amounting in all to 3,800 dollars; and the said Thornburg obligated himself, as soon as said money was all paid, to make to said company a good and sufficient deed therefor. That immediately upon the execution of said agreement, said Thornburg delivered the possession of said lot and said four acres, three roods and twenty-four perches to said company, and removed said buildings off of said right of way. That said company, instead of complying with its said obligation, had at the

time of the institution of this suit in April, 1858, only paid thereof 2,012 dollars and 50 cents, leaving a balance of 1,787 dollars and 50 cents, with interest from said 8th of March, 1854, still in arrear and unpaid.

The decree applies said payment of 2,012 dollars and 50 cents to said 2,275 dollars agreed to be paid for the removal of said dwelling house and barn, adjudges said appellee to have a lien on said lot for the payment of said 300 dollars, and also, a lien on said right of way for the payment of said 1,225 dollars, and provides for the sale of said lot and said right of way, unless said 300 dollars, and said 1,225 dollars, with their interest, are paid within twelve months from the date of said decree.

It is objected by the appellant, that the court erred in the application of the payments. The rule on this subject is well stated by chief justice Marshall in the case of *Field vs. Holland*, 6 Cranch, 27; and is sustained by the cases of *Wilson et al.* vs. *Bunk et al.*, 7 Allen, 270, and 11 Ohio State Rep., 510; according to which the court below rightly applied the payments in this case. I further think, that the court was bound either to execute the contract of sale, or rescind it altogether, and restore the parties *in statu quo*, by discharging the purchaser from the payment of the purchase money, and restoring the possession of the land and easement to the vendor. And since no ground for rescision is alleged, shown or claimed, there was no alternative left but to execute the contract, by decreeing the purchaser to pay the purchase money; the property should have been sold for that purpose, or so much thereof as might be requisite. *Lewis et al.*, vs. *Caperton's ex'or et al.*, 8 Grattan, 163; *Young* vs. *Mauck*, 15 Grattan, 300; *Adams* vs. *Stillwell*, 14 Ohio, 20.

But, before a sale should take place, the vendor should have been required to file a proper deed for the land in pursuance of the contract of sale, properly executed and acknowledged for record, with the relinquishment of his wife's dower right therein. And since no such deed was filed or required, the decree should be reversed for that

cause, and the cause sent back to the circuit court, to be there proceeded in according to equity and the principles above indicated.

HARRISON, J., concurred with Brown, J.

BERKSHIRE, President, dissentiente.

DECREE REVERSED, and cause sent back for further proceedings.