THE RELIEF BUILDING ASSOCIATION OF BALTIMORE
CITY *vs.* MARY SCHMIDT and JUSTUS SCHMIDT.

*Insolvent Law not applicable to a Married Woman.*

The insolvent law of this State contained in Art. 48 of the Code, and
in previous Acts, does not embrace the case of a married woman
as an insolvent debtor; nor do the Acts subsequent to the Code,
making special provision for enabling married women to contract,
and for recoveries against them at law, extend the provisions, or
affect the construction of the insolvent law in the Code.

APPEAL from the Circuit Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., ALVEY,
ROBINSON and IRVING, J.

*John Carson,* for the appellant.

*J. Upshur Dennis,* for the appellees.

ALVEY, J., delivered the opinion of the Court.

The appeal in this case was taken from an order dismissing the petition of the purchaser, under a decree,
praying for the rescission of an order of ratification of the
sale.   The decree was passed upon the petition of the
appellant, the mortgagee, for the sale of the mortgaged
premises ; and default having occurred, the sale was made
and reported by the trustee, the appellant having become
the purchaser.   The mortgage was made by husband and
wife, the property embraced being that of the wife,
acquired by her in 1872.   After the property had been
advertised for sale by the trustee under the decree, the
wife, one of the mortgagors, applied for the benefit of

7                        v. 55.

the insolvent law of the State; the application being made on the 12th of April, 1879, and the sale by the trustee under the decree being made on the 14th of April, 1879. After this, the trustee in insolvency proceeded to sell the same property, and the appellant became the purchaser thereof at that sale also. This latter sale was reported to the insolvent Court, and the appellant excepted thereto, upon the ground that a married woman cannot take the benefit of the insolvent law. That proceeding is still pending undisposed of. Afterwards the sale made under the decree was finally ratified. Subsequently, but during the same term of Court, the appellant, as purchaser, filed a petition asking a rescission of the order of ratification, upon the ground that the sale made by the trustee under the decree, was wholly null and void, by reason of the fact that Mary Schmidt, the *feme covert* mortgagor, had previously applied for the benefit of the insolvent law. This petition was dismissed, and it is from the order of dismissal that the present appeal has been taken.

The sole question for decision is, whether the insolvent law of this State, in force at the time of the application involved, embraced the case of a married woman as an insolvent debtor.

We are not aware that it was ever supposed, until very recently, that the insolvent laws of this State had any application whatever to the case of a married woman, treated as an insolvent debtor. It is quite certain that the insolvent laws that prevailed prior to the Act of 1854, ch. 193, had no such application. The liability to arrest and imprisonment for debt, and the appearance bond of the applicant, contemplated by those laws, to say nothing of many other provisions that a married woman could not, consistently with her legal *status*, be required to conform to, would plainly show that those laws were never intended to apply to the case of a married woman. After

the adoption of the Constitution of 1851, abolishing imprisonment for debt, and the appearance bond of the applicant was no longer essential, it became necessary that the insolvent system should be revised, and hence the passage of the Act of 1854, ch. 193, which was only an attempt to revise and systematise the previous legislation upon the subject, and making it conform to the new state of things. There is nothing whatever to indicate any purpose on the part of the Legislature to embrace within the provisions of that Act any persons or class of persons not embraced by the pre-existing insolvent laws. That Act, with but slight modification in some of its provisions, was embodied in the Code, as Article 48. The main design of that, as of all previous insolvent laws, was the relief of insolvent debtors, and to discharge them from their contracts and obligations. Hence it was provided, that, if the applicant complied with all the provisions of the statute, and there was no sufficient cause shown against it, the Court should "discharge the insolvent from all debts and contracts made before the filing of his petition, and that he should be released from all such debts and contracts," &c. *Code, Art.* 48, *sec.* 4. This main provision and leading purpose of the statute could have no application to the case of a married woman, as the law stood at the time of the passage of the Act of 1854, or the adoption of the Code in 1860. As the law stood at that time and previously, a *feme covert* could not, at law, enter into any valid contract to bind either her person or her estate, except to render liable a limited acquisition to process of attachment, under the Act of 1842; and even in equity she could not by contract bind her person, or her property generally; but only her separate property, when the contract was made with special reference thereto. There was no personal obligation incurred by her contract, and while in a Court of law it was regarded as invalid and without legal effect, a

Court of equity had no power to enforce it against her, *in personam*, but only *in rem* against her separate property charged therewith. 2 *Sto. Eq. Jur.*, secs. 1397, 1398; *Koontz vs. Nabb*, 16 *Md.*, 549; *Griffith vs. Clarke*, 18 *Md.*, 457. There was therefore no reason why the statute should be made to apply to the case of a married woman; for her contracts could only be enforced to the extent of her separate property charged, and when that was disposed of or appropriated, neither she nor any other property that she might own could ever be held liable. And though the Legislature has, since the adoption of the Code, passed various Acts making special provision for enabling married women to contract, and for recoveries against them at law, as by the Acts of 1862, ch. 49; 1867, ch. 223; 1872, ch. 270; 1880, ch. 253, those Acts can in no manner extend the provisions, or affect the construction of the insolvent law, as we find it in the Code.

But there are other reasons why a married woman cannot obtain the benefit of the insolvent law, and which show conclusively that the law was never intended to apply to her.

Section 2 of Article 48 of the Code provides, that the insolvent shall convey to the trustee to be appointed by the Court, all his property and estate of every description, and it is not until this is done that the Court is required, by the succeeding section, to fix a day for the insolvent to appear to answer interrogatories or allegations by the creditors. The making the deed, therefore, to the trustee, is an essential condition in the proceedings; and, if the husband be sane, there is no law enabling a married woman to convey her estate held under the Code, except it be by the joint deed of herself and her husband. This is expressly so provided by section 2 of Article 45 of the Code, as re-enacted by the Act of 1872, ch. 270.

Now, the wife has the right to apply for and obtain the benefit of the insolvent law, or she has not; it must be

the one thing or the other absolutely. It cannot depend upon the mere will and pleasure of the husband, as would be the case if the husband is required to join in the deed to the trustee. If such qualified right had been contemplated, we should surely have had something in the terms of the statute providing for the case. And without the husband's joinder in the deed, we can hardly suppose it possible that the Legislature could have intended, after placing an express restriction upon the wife, as to her power to convey without the joinder of her husband, that she should have the way open to her of simply applying for the benefit of the insolvent law, as a means of disposing of her property without his consent. If she has the right to apply, whether she be actually insolvent or not, would be wholly immaterial as to the vesting of the property in the trustee. *State, use of Buckey vs. Cutler*, 18 *Md.*, 419. We find nothing in the law to justify the conclusion that she has any such right.

This Court, then, being of opinion, for the reasons stated, that the application for the benefit of the insolvent law by the *feme covert* mortgagor was a mere nullity, and without any legal effect whatever, it follows that such application, and the proceedings thereon, can in no manner affect the title to the mortgaged property sold to the appellant by the trustee under the decree of sale; and therefore the ratification was proper, and the Court below committed no error in refusing the prayer of the appellant to rescind the order of ratification. The order appealed from will be affirmed, with costs to the appellees.

*Order affirmed, and*
*cause remanded.*

(Decided 16th December, 1880.)