# CHARLESTON

HUNTINGTON PLUMBING & SUPPLY COMPANY v.

McGUFFIN *et als.*

.Submitted September 22, 1914.    Decided October 6, 1914.

1. MECHANICS' LIENS—*Enforcement of Lien—Bar of Suit—Adding New Party.*

Though in a suit by a subcontractor against the owner to enforce his lien, the principal contractor, a necessary party, is not impleaded in the original bill, the suit will not be barred by bringing him in on an amended bill, filed six months after the filing of the lien for record, the owner of the property not being prejudiced thereby. (p. 79).

2. SAME—*Statement of Account—Sufficiency—Date of Items.*

An account by items, of a subcontractor, dated April 30, 1906, duly sworn to and recorded, and filed with the owner July 5, 1906, in compliance with section 3, chapter 75, Code 1913, the last items therein for labor and material, as shown thereby, having been furnished May 31, 1906, constitutes a substantial compliance with said statute, although the year of the first and of some of the subsequent items does not appear opposite or above the date of the items charged in the account. (p. 79).

3. SAME—*Payments—Application—Subcontractor.*

While the statute gives no lien on the property of the owner for any items in an account of such subcontractor furnished beyond the period of nine months from the date of the notice served on the owner; nevertheless it gives a lien thereon for all items of the account furnished within such period of nine months, and payments made and credited will be applied first to the items not covered by the lien, so as to preserve the lien for the items actually furnished within that period. (p. 81).

4. SAME—*Debt Secured—Continuous Contract.*

Where the contract of such subcontractor is a continuous one, and

the labor or material furnished thereunder has been done in execution thereof, though in part by the order of the owner, after the failure of the principal contractor, he is by the statute entitled to the lien therefor, by giving notice to the owner, and filing his account for record within the time specified in the statute, after he shall have ceased to perform the labor or furnish such material. p. 82).

Appeal from Circuit Court, Fayette County.

Suit by Huntington Plumbing & Supply Company against John A. McGuffin and others. From decree for defendants, plaintiff appeals.

*Reversed and Remanded.*

*Enslow, Fitzpatrick, Alderson & Baker, Wyatt & Graham,* and *Edmund R. French,* for appellant.

*Dillon & Nuckolls,* for appellees.

MILLER, PRESIDENT:

In a suit to enforce a mechanic's or materialman's lien, the first point made for appellees in support of the decree appealed from is, that the suit was barred, not at the time it was originally brought, but at the time the bill was amended bringing in the principal contractor as a necessary defendant. That the principal contractor is a necessary party we decided in *Augir* v. *Warder,* 68 W. Va. 752, and the decree was reversed. But when the case came up again, on the point here presented, we decided that such amendment does not prejudice the owner of the property, and that the suit is not barred because at the time of the amendment six months had then elapsed. So we overrule the point. *Augir* v. *Warder,* 74 W. Va. 103, 81 S. E. 708.

The next point we will notice is, that no itemized account, giving dates, &c., was filed with the owner within thirty five days from the completion of the contract, as required by section 3, chapter 75, serial section 3844, Code 1913. The argument advanced in support of this point is that as the account filed, at the heading, is dated April 30, 1906, and the first item is dated August 31, the year not being indicated opposite or above the item, it must be assumed that the days and months opposite the items in the account follow the dat-

ing at the head of the account. We cannot agree with counsel on this proposition. Nothing appearing in the account to show the contrary, we think it must be assumed that the dating at the head of a store account or a materialman's account, like the one involved here, presumably follows the date of the last item in the account. A merchant in making up his account would naturally and properly date it on the day of making up or rendering the account, not one, two or three months ahead of the first item therein. But if there could be any doubt about the fact in this case, there are other dates in the account, giving the years, that remove all doubt. The items run along regularly from month to month, beginning August 31, without the year, until the items of February 20, are reached, with 1906 opposite or above them. Then items dated April 18, and after them certain credits; and immediately after these the following: "O. K. J. S. Armentrout", showing approval by the principal contractor up to and including items of April 18, 1906, after the account had been made up on April 30, 1906, shown by the heading. Then are superadded items dated May 21, 25, 30 and 31, 1906, for labor and material furnished under the contract, but by order of the owner, after the failure of the principal contractor. Moreover, the whole account as rendered and filed with the owner, and recorded, appears to have been sworn to on July 4, 1906, which would be more than a month, according to counsel's theory, before the date of the first item in the account. We are of opinion this account is a substantial compliance with the requirements of the statute, and that the owner could not possibly have been misled or deceived thereby.

Another point is that the account filed includes items furnished within a period exceeding nine months from the date of the notice to the owner, contrary to section 3, chapter 75, of the Code. That section also says that failure to so notify him, as therein provided "shall release the owner from all responsibility, and his property from all lien for any item therein done or furnished prior to the said notice." The items in this account, as shown, began August 31, 1905, and the last item for labor and material is dated May 31, 1906. Notice to

the owner was served July 5, 1906; so that the account as filed with the owner and recorded covers a period a little in excess of ten months from the date of the notice. Of course there is no lien for any items antedating nine months from July 5, 1906, which would exclude all items prior to October 5, 1905. The aggregate of the items up to and including October 4, 1905, is $2,125.77; but the aggregate of the two cash credits of $1,200.00, of November 12 and December 5, 1905, respectively, aggregating $2,400.00, the debtor not having otherwise directed, the law would first apply to the oldest items of the account, leaving a balance due on the remaining items, after applying all credits, according to the account filed, of $2,317.62, and constituting a lien on the owner's property.

But the last point to be noticed, and the one most strongly urged in support of the decree, is, that the items of the account, cover two separate and distinct contracts, the first with Armentrout, as principal contractor, the other, beginning with the items charged as of May 21, 1906, furnished pursuant to a new contract made directly with the owner, and that the latter cannot be tacked to the former, to avoid the limitations of the statute, or extend the time for filing with the owner the notice required thereby. The authorities cited for the proposition are 27 Cyc. 144; *Lane* v. *Jones*, 79 Ala. 156, and *Worthen* v. *Cleaveland*, 129 Mass. 570. We do not think these authorities applicable to the facts in this case. They apply to cases where labor and material are actually furnished under separate and distinct contracts, and not to cases like this, where labor and material, though furnished at different times, are furnished under a continuous contract, the several parts constituting a complete whole, and done in execution of such contract. We had this exact point for decision in the recent case of *Thorn* v. *Barringer*, 73 W. Va. 618, 81 S. E. 846, and denied the application of the principle of those cases to the case then in hand. In that case the owner of the property made a contract with a materialman for material to construct a house. Pending its completion, and after much material had been furnished, the owner sold the property, the contract of sale providing for the completion of the house by him, and for some small addition to it. The pur-

chaser sought to avoid the lien on the same ground on which affirmance of the decree is sought in this case. We refused to apply the rule in that case. It is not denied that the original contract of appellant was a continuous one; but the claim and argument is that pending the work, the stock of the owner corporation changed hands, and that for about a month the work was stopped, the contractor failing, and that afterwards, the new owners of the stock, or the new management, made a new contract with plaintiff, separate and distinct from the other, wherefore the account for the material and labor furnished under it cannot be tacked on the account for that furnished under the original, so as to preserve the lien.

To this proposition we cannot give our approval. On May 14, 1906, the superintendent of the owner company under the new management wrote plaintiff: "Relative to plumbing, etc., in the J. A. McGuffin house of which you were speaking last week, we want this work completed as originally intended. Please advise when you expect to begin work on it." To this letter plaintiff replied: "Yours of the 14th inst at hand instructing us to complete the plumbing Etc. in the J. A. McGuffin house as originally intended. Will send our men there tomorrow after noon on No. 2." To further give color to their theory of a new contract, counsel refer to the fact that the items in the account antedating May 21, were endorsed "O. K." by Armentrout the contractor, but who did not so endorse the items subsequent to that date, for the reason given by Cole, president of the plaintiff company, that Armentrout could only "O. K." the account up to the time the Harvey Coal and Coke Company and others took charge of the work. There is also some evidence tending to show that after that time there were some changes in the price of the labor performed. We do not think these facts very material, or such as to change the character of the plaintiff's contract, as a continuous one. In all that plaintiff did it was simply executing its original contract, which was to furnish all material and labor, do the work and add to the cost ten per cent. for profit. *Thorn* v. *Barringer,* supra, practically decides that a contract so executed constitutes a continuous contract, entitling the contractor to a lien as under the original. We think this is the

rule in all states where, as in this state, the law gives a subcontractor a direct lien on the property, and not, as in other states, by way of subrogation to the rights of the principal contractor. Under our decisions the lien begins when the work under the contract begins and continues to the completion of the contract, and thereafter until paid, if the proper proceedings have been taken to perpetuate it. In Boisot on Mechanics' Liens, section 236, it is said : "But, in states where the statutes give subcontractors a direct lien, the failure of the contractor to complete his contract does not destroy the subcontractor's lien." And in the same paragraph: "So, too, where the contractor defaults, and the owner, instead of forfeiting the contract, elects to complete the work himself, and does so for less than the contract price, he is liable to subcontractor's liens to the extent of the difference between the contract price and the cost of completing the work, including the payments previously made to the contractor."

We are, therefore, of opinion to reverse the decree and remand the cause for further proceedings to be had in accordance with the principles herein enumerated, and further according to the rules governing courts of equity.

*Reversed and Remanded.*