# CHARLESTON

W. BATESON & COMPANY v. BALDWIN FORGING & TOOL COMPANY, *et al.*

Submitted January 26, 1915.    Decided February 2, 1915.

1. MECHANICS' LIENS—*Subcontractor's Lien—Validity.*
   The lien of a subcontractor, filed pursuant to section 3, chapter 75, serial section 3844, Code 1913, containing an itemized account of bricks furnished from time to time, is not void on its face or in fact, because it contains a lump credit for 187,000 bricks, furnished, but not used in the construction of the building.    (p. 576).

2. SAME—*Subcontractor's Lien—Enforcement—Sufficiency of Evidence.*
   The decree below adjudging to such lienor the balance claimed by him for said material, and as a valid lien upon the property of the owner, and that such itemized account was served upon the owner and filed in the clerk's office, within the time required by the statute, facts put in issue by the pleadings, is amply supported by a reasonable view of the evidence.    (p. 579).

3. SAME—*Subcontractor's Lien—Validity—Use of Material.*
   The fact that a portion of the bricks so furnished was used in constructing a well on adjoining land with right appurtenant to the property of the owner and attached to and connected with the same by means of pipes, etc., and necessary in the operation of his plant, does not render the lien therefor on said plant invalid.    (p. 582).

4. SAME—*Materialman's Lien—Validity—Use of Material.*
   That such subcontractor or materialman at the time of contracting with the principal contractor for such material, or while furnishing the same, may have been advised that a portion thereof was to be used by the principal contractor in other buildings than the one covered by his contract with the owner on whose property the lien is asserted, will not defeat the lien for the bricks actually furnished and used in the structure on the property of such owner.    (p. 582).

5. SAME—*Subcontractor's Lien—Material Furnished.*
   Though material furnished by a subcontractor be charged in a general account with the principal contractor, the subcontractor will nevertheless be entitled to the lien given by statute therefor, to the extent of the material so furnished and actually entering into the construction of the building on the owner's land, if such material was in fact furnished with reference to and in execution of such contract of the principal contractor.    (p. 583).

6. SAME—*Payments—Application.*
   Payments made by a principal contractor on his account with such

subcontractor, if not otherwise applied by him, may be applied by the creditor or by a court of equity to the oldest items in the account, so as not to defeat the lien for the material furnished by such subcontractor, and actually entering into the construction of the building contracted for. (p. 583).

7. SAME—*Subcontractor—Right to Lien—Validity.*

A subcontractor contracting to furnish the material and labor and perform a portion of the contract of the principal contractor, for a stipulated price, has a lien therefor, and such lien is not invalidated because his account is the lump sum stipulated, and is not otherwise itemized, nor because the labor was not performed by him personally. In such case the account filed with the lien setting forth the contract price is all that is required. (p. 584).

8. CONTRACTS—*Damages — Building Contract — Breach — Measure of Damages—Liability of Owner.*

In a suit by owner against contractor in a building contract for breach thereof by the latter, the measure of damages is the amount of the loss sustained by the former by reason of the breach. And where workmanship or materials prove defective and inferior the owner will be required to pay only what the building is really worth. (p. 586).

Appeal from Circuit Court, Wood County.

Suit by W. Bateson & Co. against the Baldwin Forging & Tool Company and others. From a decree for plaintiffs, defendants appeal.

*Affirmed.*

*H. P. Camden,* and *William P. Hcrod,* for appellants.

*Kreps, Russell & Hiteshew, McCluer & McCluer,* and *Smith D. Turncr,* for appellees.

MILLER, JUDGE:

Plaintiffs, principal contractors, sued defendant, to enforce against its property their alleged lien for labor performed and material furnished in the execution of a contract to construct a factory building in accordance with the plans and specifications covered by the contract, impleading also numerous subcontractors who are alleged to have performed labor and furnished material in the execution of said contract.

Answers and cross-answers were filed by the Baldwin Forging & Tool Company, and by several of the subcontractors, and answers to said cross-answers of the subcontractors were also filed by the Baldwin Forging & Tool Company.

After issues were joined on these pleadings the cause was referred to a master, to report the property of defendant company, and the several liens thereon, and the priorities thereof, and from the decree on that report and the several exceptions thereto, the Baldwin Forging & Tool Company has appealed, and Bateson & Company, without themselves applying for or obtaining an appeal from the decree against them in favor of appellant on its cross-answer, for $22,893.15, and as found by the commissioner, have attempted to cross assign error, on appellant's appeal from the decree against it in favor of other appellees, and adjudicating large sums against its property in their favor, and enforcing the liens therefor.

We will first consider and dispose of the errors assigned and relied on in the decree respecting the

### *Lien of C. H. Shatluck, Special Receiver.*

The first point of error raised by demurrer to the cross-answer, and by exceptions to the commissioner's report, over-ruled, is that the account served on appellant and recorded, and exhibited with the bill, is not such an itemized account as is required by the statute to constitute a good and valid lien on appellant's property. In support of this proposition it is said, and the fact is, that the account begins with an item on September 1, 1910, and then continues with numerous intervening items down to and including two items of November 26, 1910, the first for 11,900 bricks, by L. S. & M. S. Car No. 31797, the second, 4,500 bricks, hauled by wagon, all totaling 526,100 bricks, at $7.50 per thousand, or $3,945.75. And that following these items and footings is an item under August ——, 1910, 295,716 bricks, $2,217.87, and after them the credit item, October 4, 1910, $2,217.87; and then the following credit under date 1910, month and day not indicated, "Brick used by W. Bateson & Co., elsewhere than in Baldwin Forging & Tool Company plant and building 187 (meaning 187,000) brick at 7.50 per M. $1402.50. To balance $2543.25."

The contention is that as the credit item, 187,000 bricks, is not itemized, and the account on its face does not show what items on the debit side are covered by this credit item, so as to identify and enable the owner to definitely trace the same,

it is not an itemized account within the meaning of section 3, chapter 75, serial section 3844, Code 1913, and is therefore void on its face, and that the demurrer to the cross bill answer, and appellant's exceptions to the commissioner's report, allowing the same, should have been sustained, and relief denied.

If on its face the lien is void, as contended, the demurrer and exceptions to the commissioner's report properly presented the question. *Hill Clutch Co. v. Independent Steel Co. of America*, 74 W. Va. 353, 82 S. E. 223. The statute, section 3, chapter 75, serial section 3844, requires an itemized account, and section 4, serial section 3845, of the same chapter, requires that within sixty days after ceasing to labor on, or furnish material, the person desiring to avail himself of the lien provided by the statute, must file with the clerk of the county court, "*a just and true account* of the amount due him, after allowing all credits, together with a description of the property", &c. Lumping items, or lumping estimates, at least on the debit side, will not do. *Niswander & Co. v. Black,* 50 W. Va. 188. In the case last cited, while the lien was held bad as to the lumping estimate therein, it was held good as to all items properly itemized. So, an account containing items furnished beyond the period of nine months from the date of the notice to the owner, contrary to said section 3, of chapter 75, was held good as to the items furnished within that period. *Huntington Plumbing & Supply Co. v. McGuffin,* 75 W. Va. 78, 83 S. E. 194. The lump credit of 187,000 bricks in the account now under consideration, however, shows that of the whole number of bricks, itemized on the other side of the account, that number, whether furnished for the purpose of constructing the defendant's plant, or not, did not in fact go into that construction, for they are credited back, and a lien is not claimed for them. The question recurs, is the account void on its face for this reason?

True, as argued, the demurrer, if they be well pleaded, admits the facts alleged, but if the exhibit vouched therefor contradicts or conflicts with the allegations we take the exhibit as showing the facts and not the allegations of the pleading. *Richardson* v. *Ebert,* 61 W. Va. 523; *Board of Education* v. *Berry,* 62 W. Va. 433, 436; *Lunsford* v. *Wren,* 64 W. Va. 458, 466; *Lumber Co.* v. *Railway Co.,* 69 W. Va. 682, 688;

*Plasler* v. *Harmon,* 70 W. Va. 634, 636. And in a suit to enforce a mechanic's lien, if the bill and exhibits read together, show all the facts necessary to be alleged, the bill is sufficient in law, and the demurrer should be overruled. *Grant* v. *Cumberland Valley Cement Co.,* 58 W. Va. 162. By these authorities either party may look to the exhibit on demurrer, and neither is bound by any of the allegations in conflict or inconsistent therewith. Is this lien void then on its face, regardless of what is said about it in the other part of the pleading?

It will be observed that the statute requires an itemized account of the labor done and material furnished by a subcontractor "for the construction, alteration, * * * * of any house or other structure." The account in this case complies literally with this requirement, and is verified by the oath of the claimant, as being a just and true account. But the statute does not, in terms at least, require that the credits be itemized. What is required is an itemized account of the labor done or material furnished, and the affidavit prescribed by section three requires that affiant shall swear that a certain sum is owing on the account after allowing all just and true credits made thereon; and section four requires the account to state the "amount due him, after allowing all credits." Neither section requires the credits to be itemized. In *Grant* v. *Cumberland Valley Cement Co., supra,* we decided, point 2 of the syllabus, with respect to both debits and credits that itemization in form was unnecessary, if it appear in substance and effect. In that case the account in question contained a credit, "By aggregate of all payments made to said James Grant on account of salary up to this date, $4,000.00", and it was held good, the reasons for so holding being set out in the opinion, with citation of authorities.

So we are disposed to hold this account valid on its face. While our decisions say that such lien of a subcontractor cannot be enforced against the property of the owner, for material furnished which did not enter into the structure in some way, with perhaps some few exceptions, the statute at least gives an incipient lien from the time material is furnished, to be lost if in fact it does not go into the structure. The affidavit prescribed by said section three requires affiant to swear that the materials, etc., furnished were actually used

in the construction or alteration of the building, making plain. the meaning of our statute. Without such affidavit the lien would not be good, and unless the legislature meant that the statute should have that effect no such affidavit would have been required. *Atlantic Terra Cotta Co.* v. *Moore Constr. Co.*, 73 W. Va. 449, 80 S. E. 924; *McConnell & Drummond* v. *Hewes*, 50 W. Va. 41; *Thorn* v. *Barringer*, 73 W. Va. 618, 81 S. E. 846.

But on the merits, the first point of error is, that the allegation of the bill that an itemized account of material furnished was filed with the owner within thirty-five days after claimant ceased to furnish the same, is denied by the answer, and that there is no proof supporting it, and that there is no evidence sufficient and competent to support the allegation that the last items in the account, of November 26, 1910, were furnished on that date, or that the bricks covered by these items ever went into appellant's building.

As these issues are sharply drawn by the pleadings they must be determined in favor of or against the claimant, upon the evidence, and according to the rules and principles applicable in such cases. The commissioner in his report says, that the proof is not as definite as might be desired, but that the evidence satisfied him that of the 526,100 bricks furnished, all but 187,000 were incorporated in the building, with the exception of eight or ten thousand used in the building of a well on adjacent property, which, though not located on appellant's property, was so far attached thereto as to become a part of the plant, and his conclusion was that the lienor was entitled to a lien on the property and plant of the defendant company therefor.

But the pivotal question on which the case must turn is not alone whether the bricks were used in the building or on the plant of the owner, but whether within thirty-five days after ceasing to furnish this material notice was given the owner by the lienor as required by statute. This fact being denied the burden of course is upon the claimant to establish it clearly by proof. *Central City Brick Co.* v. *Norfolk & W. R. Co.*, 44 W. Va. 286; *Wees* v. *Elbon*, 61 W. Va. 380. A witness, Upson, manager in charge for Shattuck, receiver, swears that delivery of the 526,100 bricks furnished was com-

pleted about November 26, and with respect to the two items of November 26, one of 4,500 bricks, hauled by wagon, and the other of 11,900, shipped by rail, that he saw the first item loaded and started on its way to the plant, and as to all of the bricks hauled by wagon and rail that he saw them started from the brick works.

And in regard to the movements of the car, in which the last lot of bricks was shipped, the evidence of the railroad agents shows that it was delivered on the George Street siding for loading the bricks on November 21st; that on November 23rd, as shown by the railroad records, this car had been moved by the B. & O. Railroad Company, and that on November 24th, it was delivered to the Little Kanawha Railroad, loaded with brick for defendant company's siding at the plant; but there is no evidence showing just when the car was actually delivered on that siding. The Little Kanawha agent says that the car was received by his company on November 24th; that it was then subject to the orders of the Bateson Company, and would be held on the side track of the company until he had orders from Bateson & Company to deliver it on the defendant's switch at the plant. The next record of the railroad company after November 24th is, that the car was delivered to the B. & O. Railroad Company on November 30th, 1910, empty. A witness, Barrett, an employee of plaintiff company having charge of checking up deliveries of bricks and other material, does not appear to have been examined as to the date of the delivery at the plant of the two items of November 26th. The only part of his evidence tending to throw light on the question of the date of the delivery of these two items, or tending to show that these bricks or any portion thereof went into the construction of the plant, is, that the 187,000 bricks diverted by Bateson & Company, were bricks delivered between October 10th, 1910, and November 25th, 1910, leaving those bricks covered by the last items of the account as among those actually used in the construction of the defendant's plant, and in the construction of the well on the adjoining lot. The testimony of Bateson and others shows, or tends to show, that the bricks that were used in the plant, in filling in and patching the walls after the roof was on, and in the construction of brick piers in the forge shop,

machine shop and grinding room, were of the brick lastly delivered. The evidence shows clearly that the bricks lastly delivered were those covered by the items of November 26th, and Bateson swears that approximately sixteen or seventeen thousand brick were used in constructing these piers, and that all these were bricks purchased of the Parkersburg Brick Company, Shattuck, receiver.

We cannot detail all the evidence, but from that recited, and other evidence in the case, we think the commissioner was justified in finding that the bricks charged as of November 26th, were delivered to Bateson & Company, and that they all went into the plant of the defendant company. True it cannot be said that there is much, if any, conflict in the evidence on this point. The question is what does the evidence prove in regard to the date of the delivery of these last bricks, and the use made of them, whether in defendant's plant, or diverted to other uses. The fact that 4,500 bricks were delivered by wagon on November 26th, is supported by the testimony of Upson, without doubt. The doubt, if any, relates to the use of the bricks after they were delivered. Contrary to what seems to be the general rule in many jurisdictions, our statute requires that in order to perfect the incipient lien begun by the delivery of the material the lienor must show that the material actually went into the construction of the building contracted for. Such being the rule of the statute, and one, as in this case, sometimes difficult to comply with, we think it should not be enforced with such rigidity as to work injustice, and render it next to impossible for the lienor to comply therewith, and to deprive him of his lien for material furnished in good faith, and when he has, as we think the evidence of the special receiver shows in this case, established with reasonable certainty that the material furnished by him was actually consumed in the execution of his contract by the principal contractor. The owner has it in his power by due care to save himself from any imposition. The commissioner having found in favor of the lienor and the court having confirmed his report, and as we cannot see that the decree was unwarranted by a reasonable view of the evidence, we are not disposed to disturb the findings of the commissioner or

the decree of the court thereon, at least in so far as the bricks used went into defendant's plant.

It is contended, however, that as to the bricks used in building the water well, some ten or eleven thousand in number, there should be no lien on defendant's land for them. But if the fact be that this well was located on land leased by the defendant company or over which it had an easement and appurtenant to its plant, and connected therewith by pipes, as the evidence shows the fact to be, we think the authorities justify us in holding that there would be a lien on the plant and property of defendant for the materials used in the construction of such well on adjacent land, with right appurtenant to the property of the owner and constituting a part of his land. *Bodley* v. *Denmead,* 1 W. Va. 249; *O'Niel* v. *Taylor,* 59 W. Va. 370, 379.

As to the additional point made against this lien, that the bricks were of an inferior quality, we have examined the evidence thereon, and we find little, if any, merit in it. The statute gives a lien for the value of the material furnished. There is no evidence tending to show that the value of the bricks, as decreed, was less than the amount claimed. The evidence shows and tends to show that the price of the bricks delivered at the plant of this company was $8.50, instead of $7.50 charged therefor. So we must overrule this point.

Another point made against this lien as a whole is, that the bricks were sold on the sole credit of the contractors, and without any reference to their use in the execution of their contract with the defendant company. If the evidence established this fact the authorities cited would probably deny the claimant any lien for the brick. But we do not so understand the evidence. The evidence of Upson, representing the receiver, is, that he sold Bateson the brick for the purpose of building the building for which they had a contract with the Baldwin Forging & Tool Company. True, he says that some of these bricks were delivered at houses which Bateson & Company were building near the tool company's plant. But this would not defeat the lien for brick actually used in the construction of the defendant company's building; but the evidence clearly shows that the bricks for which a lien is claimed were furnished with special reference to the defend-

ant's factory and plant, and that those for which a lien is claimed were so used. We think these facts establish the right to the lien. 2 Jones on Liens, (3rd ed.) section 1326, citing *Choteau* v. *Thompson,* 2 Ohio St. 114, 124, opinion by Judge Thurman.

### *Lien of Chancellor Hardware Company.*

The first point of error made against the decree adjudicating this lien is, that it includes the price of the rubberoid roofing which it is claimed was furnished originally without any knowledge or understanding that it was to go into the Baldwin plant, a point just disposed of in connection with the lien of Shattuck, receiver, and the same authorities are relied upon. As in the former case, so in this, the evidence does not support the contention.

Main reliance is placed upon the fact that the material for which this lien was decreed was charged in a general account of the hardware company against Bateson & Company, and along with articles' sold generally and without any reference to their being used in defendant's plant. But Bateson & Company were not general dealers in merchandise; they were general contractors, and the chief item of the account was for the material and labor employed in applying it to the roof of defendant's factory building; and the evidence shows that when the contract for this roofing was made it was made with special reference to the contract of Bateson & Company with the Baldwin company, and with reference to its application to defendant's factory, and that the material and labor actually went into defendant's plant. The price of the roofing applied to the building as agreed upon was $3.95 per square. We think this showing under our statute sufficient to establish the lien. *McConnell & Drummond* v. *Hewes, supra; Hommel* v. *Lewis,* 104 Pa. St. 465; *Power* v. *McCord,* 36 Ill. 214; *Presbyterian Church* v. *Allison,* 10 Pa. St. 413.

The second point of error is that the commissioner and the court below applied the credits to the discharge of those items in the account of Bateson & Company which are non-lienable, and which were innocently and by mistake included in the lien as filed. We find but two credits in the account, one of September 19th, 1910, $50.96, and one of December 19th, 1910, $400.00. The contract for the rubberoid roofing in-

cluded the labor of applying it to the roof, and the amount thereof is included under one item charged in the account on February 7, 1911, $3,041.50, the very last item in the account. There being no evidence that Bateson & Company gave any direction as to the application of these payments, equity would apply them to the oldest items of the account. According to the evidence the work of putting on this roofing was begun the latter part of November, 1910, but it was not completed until January 31st, 1911, and properly it could not have been debited either to Bateson & Company, or made a lien on defendant company's plant until after the work was completed, and no payment on account thereof under the contract could have been demanded of Bateson & Company, or of the tool company until that time.

Under these facts and circumstances the hardware company had the right to make the application. *Hempfield R. Co. v. Thornburg,* 1 W. Va. 261; *Poling v. Flanagan,* 41 W. Va. 191. And a court of equity had the right to make the application of these payments it did make by the decree appealed from, no application thereof having been made by the debtor. See *Rowan v. Chenoweth,* 55 W. Va. 325; *Grafton v. Reed,* 34 W. Va. 172; *Genin v. Ingersoll,* 11 W. Va. 549.

Nor does the inclusion of non-lienable items in an account, unless fraudulently done, vitiate the lien. *Huntington Plumbing & Supply Co. v. McGuffin, supra.*

The third point of error is, that it was improper to decree the lump charge of $3,041.50, which it is said included the price of the labor for applying the roofing by Cecil-Jones Company, characterized as second subcontractors. There is no merit in this point. The hardware company contracted to furnish and apply this roofing at so much per square, and of course could not perform the contract, being a corporation, without employing labor to make the application. It is settled by our own and the decisions of other states with statutes like ours, that a subcontractor executing a contract of this kind, and who does not himself personally furnish the material and perform the labor, is nevertheless the one furnishing the material and performing the labor under the statutes, and is entitled to the lien provided thereby. *Collins v. Board of Trustees,* 72 W. Va. 583. And under such a contract for an

entire consideration, the account filed with the lien setting forth the contract price is all that is required and is sufficient. *Taylor* v. *Netherwood*, 20 S. E. 888; Boisot on Mechanics' Liens, section 411; *Gunther* v. *Bennett*, 72 Md. 384, 19 Atl. 1048; *Pue* v. *Hetzell*, 16 Md. 549; *Woolf* v. *Schaefer*, 93 N. Y. S. 184; *Ogden* v. *Alexander*, 140 N. Y. 356, 35 N. E. 638; *Clark* v. *Heylman*, 80 N. Y. S. 794.

This substantially disposes of all points of error made against the allowance of this lien. We, therefore, overrule the points.

### Lien of the Radeker Lumber Company.

Two points only are made against the decree respecting this lien. First, that no material was furnished after December 21st, 1910, and notice of the lien therefore was not filed in time; and second, that the first item in the account, amounting to $76.20, was for lumber not of the grade provided for by the contract. We have examined the evidence on these points. The contract between Bateson & Company and the Baldwin Forging & Tool Company was not recorded, and the lienor, therefore, given no notice thereof. As the commissioner passed upon these questions of fact and his findings were confirmed by the court, and there is no substantial conflict in the evidence thereon, we see no merit therein and must overrule the points.

### Lien of G. W. Niswander & Company.

This company filed its lien for $621.35. It consists of but three items of debit and one of credit. The first item on the debit side is November 2, 1910, and the last January 7, 1911. The commissioner reported $346.97 due this company, but upon exceptions thereto, the court sustained the exceptions in part, and decreed in favor of the company $569.20, thereby deducting from the account filed the price of 82 1/2 barrels of cement, covered by the account, and which though furnished was not found to have gone into the construction of defendant's building. The evidence shows that out of the original amount of cement furnished 200 barrels were taken and paid for by the Baldwin Forging & Tool Company, or by Baldwin individually, and the check given by Baldwin to Niswander & Company for this cement is credited in the account. The commissioner seems to have been of the opinion

under the evidence that of the remaining cement 200 barrels. thereof were hauled away and stored in another building and never went into the construction of defendant's plant, but the court did not take this view of the evidence, but sustained Niswander & Company's exception, except as to the 82 1/2 barrels referred to. The court evidently based its conclusion on the evidence of Bateson, that all of the cement purchased, except that taken by the Baldwin Forging & Tool Company, and the 82 1/2 barrels, was actually used in the construction of the defendant's plant, and that his being the only positive evidence on that question, was controlling. We cannot say the court erred in this conclusion or in sustaining the exceptions to the commissioner's report. So we think we should affirm the decree with respect to this lien.

*W. Bateson & Company's Cross-assignment of Error.*

Though they did not themselves apply for and obtain an appeal, our rule, as construed, gives them right to cross-assign error in the decree. *Morgan* v. *Ohio River R. Co.*, 39 W. Va. 17.

They interpose the point of error that the court overruled the exceptions of their trustees in bankruptcy, G. L. Dudley, and others, to the commissioner's report, numbered from one to nine, inclusive. These exceptions, and particularly numbers 4, 5, and 6 thereof, mainly relied on, are to the effect that the commissioner's report, and so the decree of the court thereon, are predicated on a wrong rule for measuring damages, and upon an erroneous theory as to the duty and obligation of the defendant company on taking possession of the property, pursuant to said article five of the contract, for a supposed breach thereof by plaintiffs, and giving notice of its elections thereunder. Two propositions are submitted: First, that the rule for measuring damages in case of broken and partially performed contracts is the stipulated price, less payments, and the sum that it will take to complete the job according to the contract. Citing *Dillon & Harrison* v. *Suburban Land Co.*, 73 W. Va. 363, 80 S. E. 471. Second, that as according to their contention the Baldwin Forging & Tool Company elected under said article five of the contract to take possession of the property and remedy the alleged defects and complete the contract according to its terms, and have never

done so, it was bound to go according to its election of one of the alternative remedies provided by the contract, and was not entitled to damages until it had so performed the contract. Citing 15 Cyc. 1086, *Texas &c. R. Co.* v. *Marlor*, 123 U. S. 687, and 1 Beach on Contract, section 772.

The rule for the measure of damages stated is the one applicable where the owner breaches the contract, and through his fault the contractor is denied the right to complete the contract. Such was the case of *Dillon & Harrison* v. *Suburban Land Co., supra*. But here the contention, at least, is that there was breach by the contractor in numerous particulars pointed out by the architect, and by the notice served by owner on contractor, and for which damages were found by the commissioner and decreed by the court. But where part performance is the fault of the contractor the owner is entitled to recover to the extent of the damages sustained. 4 Elliott on Cont., section 3701. In such cases and where the workmanship and materials prove defective and inferior, the owner will be required to pay only what the building is really worth. *Iaege* v. *Bossieux*, 15 Grat. 83.

We do not interpret the notice served by appellant on Bateson & Company, pursuant to said article five, as counsel for Bateson & Company does, or as waiving its right to take possession, and to demand damages for breaches of the contract, in respect to quality of material, workmanship, etc. The notice to Bateson & Company was that appellant would take possession under protest, and would either remedy the defects complained of and deduct the costs thereof, or claim damages resulting to it from breaches of the contract by Bateson & Company, in the respects pointed out by the architect and by it. So far as the record shows appellant did not undertake to remedy the defects, but took charge of the property, and by cross suit, and on the findings of the commissioner, was, by the decree complained of, decreed the damages claimed and proven. We have examined the evidence on this subject, and we cannot say that the report of the commissioner and the decree thereon are not supported by the evidence, and relief therefrom must therefore be denied Bateson & Company.

Finding no error in the decree it must be affirmed as to all parties, and it will be so ordered.

*Affirmed.*